## ENNIS *et al.*, *vs.* WILLIAMS *et al.*

Notice of the dissolution of the partnership must be given to those who have dealt with the firm, or each member of the firm will be bound by the acts of the other dealing in the name of the firm with such persons, especially when the transaction relates to the past debt of the dissolved partnership.

Motion for New Trial, from Chattahoochee Superior Court. Tried before Judge PERKINS, at November Term, 1859.

The facts of this case are fully stated in the opinion of the Court.

L. T. DOWNING, for plaintiffs in error.

JOHNSON & SLOAN, for defendants in error.

*By the Court.*—LYON, J., delivering the opinion.

The plaintiffs instituted an action of debt in the Superior Court of Chattahoochee county, against the defendants, as attorneys, and partners, under the name of Williams & Oliver, to recover the sum of four hundred and twenty-eight dollars and eleven cents on a note dated at Columbus, Ga., on 2d January, 1854, made and delivered to plaintiff, payable one day after date, to the plaintiffs for that sum. The declaration also contained a special count for goods, wares, etc., sold and delivered to certain persons at Buena Vista engaged in the business of carriage making, in partnership, under the name of Webb, Ford & Co., upon a letter of credit given by defendants and the goods, consequently, charged to defendants.

To this action defendant, Williams, filed a special plea of *non est factum*, alleging that at the time the note sued on was given, the firm of Williams & Oliver was dissolved, if it ever existed, and that said firm name was signed to said note by Oliver, without the knowledge or consent of defendant, and taken by the plaintiffs with a full knowledge of the fact. Further, that at the date of the note there was no such partnership, and that the partnership that did exist between defendants was one solely for the practice of law; and further, that it was not the act or deed of him, said defendant.

On the trial, the plaintiff proved by one Douglass, (to whom the bill of particulars set out in plaintiff's declaration, amounting, in the whole, to $661 86, was exhibited,) that he sold and delivered the goods at the prices stated to Ford, on an order from Williams & Oliver, to let Ford have what he might wish to purchase to carry on his carriage business, which order, with a letter from Williams—both signed by defendant, Williams—were attached to the answers of the witness. The goods were sold on the 26th and 27th January, 1853, on the occasion of Ford's visit to Columbus, mentioned in the order. The goods were sold and delivered entirely on the credit of the order. This witness was at the time a clerk and book-keeper for the plaintiffs. Witness had a conversation with the defendant, Williams, while the suit was pending in Russell county, Alabama. Williams told witness that he would throw him in that suit. Witness replied, that then the suit would be brought on the account. Williams said, in that case, the plaintiff could only recover the amount of goods purchased by Ford, on his first visit to Columbus. Witness told him that all the goods were purchased at the first visit. Does not recollect when he and plaintiffs first heard of the dissolution of the firm of Williams & Oliver. The plaintiffs had frequently employed defendants as attorneys at law to collect claims for them.

The plaintiffs then introduced the following order and letter, to-wit:

BUENA VISTA, January 25, 1853.

" Messrs. J. ENNIS & Co.—

"*Gents:* Please let Mr. Ford have what he may wish to purchase, to carry on his carriage business, for which, hold us responsible. Our responsibility, however, is to extend only to purchases made during his present visit to your place.            Yours, etc.,

" WILLIAMS & OLIVER,
" per WILLIAM F. WILLIAMS."

OPELIKA, ALA., August 25, 1857.

" Messrs. J. ENNIS & Co.—

" I learn by a letter from Mr. L. T. Downing you have lodged the note of Williams & Oliver in his hands for collec-

tion.   If you think you can get any money out of me by pursuing such a course, you can '*fire away.*'     That's a game two can play at.

                              " WM. F. WILLIAMS."

The witness, Douglass, in reply to cross-interrogatories, said that defendants were parties in the practice of law; does not know how long they remained in partnership, or that they ever were in partnership in any business except the law; the goods were all sold to Ford on the order of Williams & Oliver, signed by Williams; none of the goods were sold to either Williams or Oliver personally; the goods were charged on the books of plaintiff, in the first place, to Williams and Oliver; $232 75 has been paid on the account, and books closed by note given by Oliver for Williams & Oliver, on 25th May, 1854; note was given then, but dated back to time when the account was due, as is usual; the note sued on was given to close the books for the balance due on the account, and by Oliver, who signed the firm name.

Mr. Ellis, the proprietor of the Columbus Times, testified: That the law card of defendants, as partners, was published in his paper from 27th February, 1852, to 28th January, 1853, and discontinued; a law card of Williams, Oliver & Brown, as partners, was inserted in his paper on 28th January, 1853, and discontinued about 1st December, 1853; the plaintiffs reside and do business in Columbus, and have for the last ten or fifteen years; they were subscribers to his paper while the advertisements were running, and regularly received the paper; by the omission of the printer, the card of Williams and Oliver was not taken out when that of Williams, Oliver & Brown was first inserted, although it was so ordered, but continued to run for a little while, and was then taken out; the note set out in plaintiff's declaration was read in evidence.

Mark A. Blandford testified: That the partnership of Williams & Oliver was formed some time in 1852, in Buena Vista, Marion county, for the practice of law, which continued until the early part of 1853, when that partnership was dissolved, and a new one was formed of Williams, Brown & Oliver; this last one continued until the last of December, 1853, when it was dissolved; Brown went to Talbotton, and Williams left and went to Columbus.

Wiley Williams testified :    That defendant, Williams, was an unmarried man ; came to Columbus to live about first of November, 1853 ; about the first of the year 1854 he furnished himself a room across the street from the plaintiff's place of business, and lived in Columbus during that year. The defendant, Williams, also put in proof an account made by himself with the plaintiff during the year 1854, of little articles such as a single man would likely have about his room, such as brushes, brooms, tubs, buckets, etc.

The jury returned a verdict for the plaintiff, against both, defendants and defendant, Williams, moved for a new trial on four different grounds: That the verdict was against law, evidence, the charge of the Court, and because the Court erred in its charge to the jury.

The Court granted a new trial generally, without stating on what ground the new trial was allowed.

To which decision the plaintiff excepted, and that is the question for our consideration.

Was the Court right in granting the new trial?

It is altogether unnecessary to notice any of the grounds of the motion for new trial, for the whole question in the case is, whether the giving the note of the firm, by Oliver, one of the parties, after the alleged dissolution of the partnership, discharged the defendant, Williams, from liability on this debt?    For it will not be denied but that he is liable, unless he was discharged by that fact.

This Court decided in *Stone vs. Chamberlin & Bancroft,* 20 *Ga.,* 259, "that if the creditor, knowing the dissolution, takes a new note from one member of a firm, so dissolved, in renewal of an old note of the firm, that fact will discharge the other members of the firm, who were not present or assenting thereto, although the firm name was signed thereto. On the authority of that case, the defense in this case rested. To that everything tended.

This case, fortunately for the plaintiffs, lacks a very important and necessary ingredient of that of *Stone vs. Chamberlin & Bancroft*—that of a knowledge of the dissolution of the partnership of Williams & Oliver, by the plaintiff, at the time their note sued on was given in liquidation of the open account.    It is not enough to say that the plaintiffs might have known it from the fact of the advertisement of the law card of Williams & Oliver being discontinued, or the forma-

tion of a new firm of Williams, Oliver & Brown, or that Williams had left Buena Vista and settled in Columbus. The partnership might have continued, notwithstanding. There must be affirmative proof that the partnership was dissolved and the plaintiff took this note with actual knowledge of that fact. There is no proof of any such fact in the record. There was proof that the law partnership of Williams & Oliver was dissolved, but there was no proof—not the slightest—that the plaintiffs knew even that. 3d *Kent's Com.*, 66, 67; *Collier on Part.*, sec. 114*n.*, secs. 120, 530; *Ketchum & Black vs. Clark*, 1 *T. R.*, 144; *Lucas vs. Bk. Darien*, 2 *Stew. Ala.*, 280. Notice of a dissolution as to persons who had dealt with the firm, must be actual, or something that is equivalent thereto. In this cause, even the law partnership of Williams & Oliver never was advertised. But what had the law partnership of Williams & Oliver to do with this transaction? It was not in the scope of their partnership, as law partners. Without the clear recognition of each partner, the one not participating in the creation of this liability would not have been liable. Williams created the liability, and Oliver ratified it as their joint debt by giving the note. This charged both with the debt. As to this transaction, these defendants must be viewed as partners, independently of their law partnership. Viewed in that light, what notice was there of a dissolution—of a discontinuance of the right of each to bind the other in respect to this particular transaction? None whatever. The verdict of the jury was right, and the judgment granting a new trial was erroneous, and that judgment must be reversed, and the new trial refused.