McKernan *v.* Mayhew et al.

*D. Moss,* for the appellant.

---

McKernan *v.* Mayhew *et al.*

Contract—Parol Evidence.—*A* is embarrassed. *B,* his son, is willing to aid him in the adjustment of his indebtedness. He has some claims upon the Government for supplies furnished, but they are not yet finally adjusted and allowed. One of them was for 1,165 dollars. *B* therefore constituted *C* his agent, to aid in the

McKernan *v.* Mayhew et al.

settlement·of his father's liabilities, and transfers to him said claims, and instructs him, that, if such of his father's creditors, as he shall designate, will surrender their claims in lieu thereof, and wait the payment of the Government claims, he will allow them principal and interest to date. What designation of creditors was made, does not appear. Many claims against *A* were filed with *C*, to be adjusted in the manner proposed by *B*. *E*, who filed the first three claims, received from *C* a receipt, in which they are fully described, and in which, after describing them, he adds, "to be paid out of the proceeds of an account of *F* and *G* for 1,165 dollars, for goods furnished the Government for the use of the *Oregon* volunteers in the Jakina Indian war, when collected by the undersigned, who holds a power of attorney for that purpose." Signed by *C*, in his individual name, and not as agent. The Government claims, left with *C*, were not sufficient to pay all the liabilities of *A*, to the extent proposed by *B*. *C* collected on the claim for 1,165 dollars, the sum of 776 dollars and 67 cents, in gold. *E* then assigned said receipt to *G*, who sued *C* upon the same, and demanded judgment for the said 776 dollars and 67 cents, and recovered.

*Held*, 1. That said receipt is assignable in equity, so as to enable the assignee to maintain an action upon it in his own name.

2. That it would be error, in the action upon said receipt, to allow *C* to aver or prove, that, notwithstanding his agreement stated in said receipt, the understanding between him and said assignor, at the date of said receipt, was, that said payment should be made *pro rata*, with all the claims filed against *A*, out of the aggregate amount, which should be collected on all said Government claims by *C*, as agent of *B*. Said receipt contains a contract which can not be altered by parol testimony, and creates a personal liability against *C*, for the amount collected on said claim for 1,165 dollars.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—The record makes the following case:

*John Cain*, Esq., of *Indianapolis*, was in debt. His son, *Andrew Jackson Cain* desired to relieve his father of his indebtedness; and, being possessed of some claims upon the

McKernan *v.* Mayhew et al.

Government, growing out of the Indian wars in *Oregon* and *Washington* Territories, he did, on the 30th of *March*, 1857, deposit with *James H. McKernan*, of *Indianapolis*, some amount of those claims, which appear to have been transferred to him by *Sellers* and *Friendly*, one of which claims was for 1,165 dollars, and, at the same time, gave *Mr. McKernan* a letter of instruction, as follows. After reciting his desire to aid his father, &c., he says:

"If such parties, [creditors of his father] as I shall designate, will surrender their claims, in lieu thereof, wait the payment of the war bond by the Government, and now in your possession, I will allow them principal and interest to date. If this arrangement does not suit the parties that I will designate, you will please enclose the bond to me, at *Madison, Indiana,*                    Very respectfully, yours,
    *March* 30, 1857.                                        A. J. Cain.
*J. H. McKernan, Esq., Indianapolis, Ind.*"

What designation of creditors, or further instructions, if any, were made or given by *A. J. Cain*, do not appear from the record. But it does appear, that, on the 3d of *April,* 1857, four days after the deposit of the claims by *A. J. Cain,* creditors began to file their demands, against *John Cain*, with *Mr. McKernan.* A list of them appears in the record. Seven creditors appear to have filed on the 3d of *April,* and, on that day, *McKernan* executed to *Thomas M. Smith*, who filed the first three claims, an instrument of the following tenor:

"Received, *Indianapolis, April* 3d, 1857, of *Thomas M. Smith,* two notes as follows:

"$100.                                        *Indianapolis, January* 14, 1852.
"Sixty days after date, I promise to pay to the order of *Thomas M. Smith & Son,* 100 dollars, value received, negotia-

ble and payable at the branch at *Indianapolis*, of the *State Bank of Indiana*, without any relief from the valuation or appraisement laws. JOHN CAIN."

" *Indianapolis, January* 14, 1852.

"One day after date, for value received, I promise to pay to *Thomas M. Smith*, or order, 45 dollars and 57 cents, without any relief whatever from valuation or appraisement laws.

"$45 57. JOHN CAIN."

"Also, an account of *William Smith*—amount, 29 dollars and 50 cents."

| " *W. H. Talbott* | |
|---|---|
| v. | In the *Marion* Circuit Court, |
| *Thomas M. Smith*, | *Indianapolis, October* 20th, 1852. |
| as indorser of *John Cain.* | |

| | |
|---|---:|
| Amount of judgment | $454 28 |
| Interest 4 years, five months, 8 days | 120 92 |
| Costs accrued | 9 23 |

$584 43

"The first note, principal, 100 dollars, and interest of 30 dollars and 53 cents, and second note of 45 dollars and 57 cents, with interest, 17 dollars and 60 cents; the account of *William Smith*, of 29 dollars and 50 cents, and the above judgment to be paid out of the proceeds of an account of *Sellers* and *Friendly*, of *Oregon* Territory, for 1,165 dollars, for goods furnished the Government, for the use of the *Oregon* volunteers in the Jakina Indian war, when collected by the undersigned, who holds a power of attorney for that purpose.

"J. H. McKERNAN."

The filing of claims continued. By the 1st of *February*, 1858, twenty-five claims, amounting to 5,126 dollars and 50 cents, had been placed in the hands of *McKernan*. Between

the 1st of *February* and the 8th of *December*, 1858, thirty-one more claims were filed, amounting to 2,382 dollars. This division of the list of claims is prefaced thus: "To come out of the next bond." Between the 8th of *December*, 1858, and the 23d of *September*, 1859, eighteen more claims were filed, amounting to 1,845 dollars and 85 cents. This third division of the list of claim is prefaced thus: "To come out of next bond." It thus appears that the aggregate of claims upon *John Cain*, filed with *McKernan*, was 9,354 dollars and 35 cents.

The record is not explicit as to the amount of war claims deposited with him by *Andrew Jackson Cain*. The amount he deposited on the 30th of *March*, 1857, is not stated. On the 5th of *August*, 1857, he made a second deposit of 2,382 dollars, and, on the 29th of *June*, 1859, he made a third deposit of 1,698 dollars; and it is clear, from the record, that he deposited, in all, over 7,500 dollars, but as to the exact amount, the record does not show very satisfactorily.

These claims, at the time of their deposit, had not been allowed by the Government, but might be subsequently, in whole or in part, and some of them in greater proportion than others. In what terms certificates were given by *Mr. McKernan* to creditors, other than as set out above, does not appear; nor does anything further appear as to his powers in the premises. It appears that *McKernan* received, in gold, upon the 1,165 dollar claim, mentioned in the instrument given to *Smith*, 776 dollars and 67 cents, and that he received, upon all the claims deposited with him, 4,791 dollars and 32 cents, but when he received the amounts does not appear, nor whether he is yet to receive a further sum upon them or not. It appears that a greater proportion of some than of other of the claims had been paid, but why is not disclosed.

The instrument above set out, given by *McKernan* to *Smith*, was assigned by the latter to *Mayhew*, accompanied by an

order on *McKernan* to pay the amounts due upon it to *Mayhew.*

*Mayhew* brought this suit, upon that instrument, against *McKernan*, to recover the amount he had received on the 1,165 dollar claim, mentioned in it, and he recovered below.

The instrument was assignable in equity, so that the assignee could sue upon it, in his own name, under the code. It may be observed, also, that an order, drawn upon a particular fund, amounts to an equitable assignment of such fund, or the amount of it specified in the order. Byles on Bills. side p. 74, note to 3d Am. ed.

It may be further observed, that, if a demand was necessary before suit, which we do not mean to intimate, a demand was made; and, as the suit is upon the instrument, not upon the order, it was not necessary to show an acceptance of the order.

The proper parties, we may also remark, are before the Court.

The present suit was brought by *Mayhew*, on the instrument given by *McKernan* to *Smith*, alleging the reception by the latter of the money on the 1,165 dollar claim, specified in it.

One paragraph of *McKernan's* answer was this:

"That so far as the claim, set forth in the complaint, is now made by the plaintiff, the writing or agreement described in the complaint was given without any consideration whatever."

This paragraph was rightly held bad on demurrer. It does not deny that the instrument was given upon a consideration to *Smith*. It is a sort of negative pregnant. Indeed, it is scarcely intelligible as to any meaning. It says, that so far as the plaintiff's claim is "*now made,*" it is without consideration. It would seem that the instrument must have

McKernan *v.* Mayhew et al.

been given upon a consideration or not, whether sued on *now* or *then.*

But the main question in the cause arises thus: The instrument given by *McKernan,* on which the suit is founded, after acknowledging the reception of the claims filed, states that the claims specified are "to be paid out of the proceeds of an account of *Sellers* and *Friendly,* of *Oregon* Territory, for 1,165 dollars, for goods furnished the Government, for the use of the *Oregon* volunteers," &c., and is signed *J. H. McKernan,* not as agent for any other party, but simply in his own name.

A receipt, it may be remarked, may, in addition to its character as receipt, contain an agreement. *Pribble* v. *Kent,* 10 Ind. 325. *McKernan* claims, that, notwithstanding his agreement states that the payment to *Smith, Mayhew's* assignor, was to come out of a particular, specified war bond or account, he is entitled to aver in answer, and show by evidence, that it was not the understanding that it was to come out of that specified bond, but, *pro rata,* with all *J. Cain's* creditors, out of the aggregate amount which might be collected on all the bonds deposited, at the time the receipt was given and afterwards, with him by *A. J. Cain.*

The importance of this question to the parties will be understood by a reference back to the account of the claims deposited by *A. J. Cain* with *McKernan.*

We think evidence could not be heard to prove such an understanding. The written agreement in question is as clear and explicit as words can make it. It is without ambiguity, and needs nothing extrinsic to aid its interpretation. It is not like the contract in a case cited, where a person acknowledges the receipt of goods or merchandise, "to be forwarded." Such a contract is ambiguous, and needs to be read in the light of extrinsic, surrounding facts, to arrive at its meaning. Forwarded—when, where, how, in what capacity, &c.?

McKernan *v.* Mayhew et al.

In the case at bar, *McKernan* has in possession, and in expectation, several war bonds, not yet allowed by the Government, with a contingency existing as to whether they will be, or, if any of them, which, and how much thereof, which claims he is to collect, as far as can be done, and pay the proceeds to *J. Cain's* creditors. The thing is in his hands. A creditor comes in to deposit his claim. *Mr. McKernan* can say to him, I will give you an obligation to pay you your *pro rata* proportion out of what I collect on all the claims, less the expense of collecting, &c. Or he might say to him, and to such an agreement he might personally bind himself, if you will agree to take your chance for pay out of a certain specified bond, thereby relinquishing all right in the others, I will agree to pay you all I collect, up to the amount of your claim, out of that bond. If the agreement was made, it would be binding. Such is the agreement in question, in this case, on its face, and we think it can not be varied by parol evidence. See Byles on Bills, *supra*, side p. 27. If this contract can be varied by parol evidence, what is the contract that can not be? If an agent contract, upon a consideration, in his own name, even beyond his powers as agent, he may bind himself. *Ibid.* And see *Kendall et al.* v. *Morton*, at this term.

*Per Curiam.*—The judgment is affirmed, with costs, and 1 per cent. damages.

*Thomas A. Hendricks*, for the appellant.

*N. B. Taylor* and *Barbour & Howland*, for the appellees.