GILCHRIST VS. BRANDE, imp.

*April 6 — September 11, 1883.*

JURORS: PRACTICE. *(1, 2) Challenges: waiver. (3, 4) What remarks· of judge must be taken down: Constitutional law.*
EVIDENCE: PARTNERSHIP. *(5) Evidence admissible though not proving· whole case. (6) Parol evidence to vary receipt. (7, 10) Evidence of partnership after notice of dissolution: admissions. (8) Private books how produced. (9)˙Notice of dissolution must be brought home. (11) Liability of partner for money converted by copartner. (12) Attorney serving for contingent fee is not a party.*

1. After twelve men were called into the jury box the plaintiff struck one name from the list and another juror was called; the defendant then struck off one name, and the striking continued until the plaintiff had stricken off two names and the defendant three; the list being then passed to the plaintiff he again struck one name therefrom. Thereupon the defendant objected to the calling of another juror for the reason that the panel was then complete. It does not appear from the record that the plaintiff had declined to· challenge in his turn or that the defendant objected to his striking· the last name from the list. *Held,* that the objection made was· properly overruled.
2. A party who declines to challenge a juror in his turn, under sec. 2851, R. S., waives each time one challenge; but the objection to· his subsequent exercise of the right so waived, unless taken in time, will, in its turn, be deemed to have been waived.
3. Under sec. 2853, R. S. (which provides that "the judge shall require the phonographic reporter to take down all that he may say during any jury trial to the jury, or to counsel in their presence, of or concerning such cause "), it was not error to overrule a request that the reporter be ordered to take down "every word which was. said by the judge during the progress of the trial in the hearing of the parties and of the jury."
[4. How far the legislature may, under the constitution, tie the tongue of the trial judge, or compel specific utterances, or provide that his communications to counsel concerning the cause shall be written, *quære.*]
5. It is no objection to evidence that it does not prove the plaintiff's whole case. If it be a link in the chain of evidence afterwards to be given, it is admissible.

6. An instrument reciting the receipt of securities, and containing a contract for their collection, may be varied by parol so far as it is a receipt.

7. Mere publication of a notice of dissolution does not preclude proof that, in fact, a partnership continued thereafter. The continued existence of the partnership need not be shown by positive proof but may be inferred from circumstances; and entries in the books made by one of the firm after the alleged dissolution, are admissible in evidence as against him.

8. The fact that private books of a party were not brought into court upon petition and special order does not affect the question of their admissibility when offered in evidence by the opposite party.

9. Publication of notice of the dissolution of a partnership in a newspaper, at the place where the business is carried on, is not sufficient to relieve a retiring partner from liability for subsequent transactions in the firm name with one having dealings with the firm prior to its dissolution. In such case notice must be brought home to the dealer, or it must appear that facts came to his knowledge sufficient to advise him or give him reason to believe that a dissolution had taken place.

10. If evidence has been given sufficient to raise a presumption that a partnership continued after an alleged dissolution, the acts and admissions of one member of the firm are admissible in evidence as against the others to strengthen the *prima facie* case so established.

11. Where one partner obtains money in the name of the firm and in the usual course of business, the other partners cannot escape liability therefor on the ground that, without their knowledge, he fraudulently converted the money to his own use.

12. An attorney at law may contract to render services in the conduct of a suit for a fee contingent on his success therein, and such agreement does not make him a party to the action or render evidence admissible of his personal treatment of the opposite party.

APPEAL from the Circuit Court for *Kenosha* County.

This is an action to recover the amount of certain moneys alleged to have been collected by the defendants while doing business as copartners and lawyers, claim collectors, loan and real estate agents, and makers of abstracts, at Kenosha, under the firm name of Brande & Thiers, on certain securities alleged to have been left by the plaintiff with them for

collection and remittance or reinvestment, and which moneys, as alleged, the firm collected and held for the use of the plaintiff, but neglected to remit or reinvest. The complaint contains two counts,— one for a balance of $2,550 collected prior to March 20, 1880, and interest, and the other for $1,700 collected prior to April 1, 1881, and interest. *Brande* answered separately, admitting the existence of the partnership from March 14, 1879, to August 1, 1879, but not thereafter; alleging the dissolution of the firm July 31, 1879, and due notice and knowledge thereof to the plaintiff; specifically denying the several allegations of the complaint; and alleging, upon information and belief, that the collections referred to were made by Thiers after the dissolution of the firm, and paid over and accounted for by him to the plaintiff.

Upon the trial, books kept by both of the defendants and containing entries by both later in date than the alleged dissolution of partnership, having been produced by a witness who held them as receiver in an action of another plaintiff against the defendant *Brande*, were offered in evidence by the plaintiff. Their admission was objected to on the ground that they could not conclude the defendant *Brande*, and because they were not competent evidence until a petition had been duly filed and verified, as required by Rule XIX, and an order of inspection granted. The objection was overruled. The plaintiff was allowed to testify, against objection, that at the time of the execution of the receipt dated March 14, 1879 (for which see the opinion), the understanding was that he should retain the securities mentioned therein in his own possession, and send them when due to Brande & Thiers for collection. Other facts are stated in the opinion.

At the close of the plaintiff's testimony *Brande's* counsel moved for a nonsuit, which was denied, and he thereupon asked for a special verdict. At the close of all the testimony the court, in pursuance of that request, submitted to the jury twenty special questions, which, with the answers,

were, in effect, that before August 1, 1879, the defendants, as copartners, agreed to collect the securities in question for one per cent. commission; that Thiers, assuming to act for the firm, collected thereon, between March 14, 1879, and March 20, 1880, $3,241.10, and between March 21, 1880, and June 30, 1881, the further sum of $1,629.67; that in pursuance of the agreement of March 14, 1879, and the letters of Thiers, assuming to act for the firm, the plaintiff remitted to Brande & Thiers for investment $300; that neither the firm nor either of the defendants ever remitted or accounted to the plaintiff for any more than $1,018.01; that the plaintiff never had any notice of the alleged dissolution of the firm before July 28, 1881; that the defendants continued to transact business for their joint profit after the alleged dissolution, and continued thereafter to occupy the same office and keep their books in the same manner as before; that the commissions charged for the collection of these securities were carried on the book of the defendants to the same accounts and in the same manner, after the alleged dissolution, as were similar charges before; that the plaintiff did not leave the securities with the defendants at the date of the receipt; that *Brande* did not then know of the receipt, nor did he prior to August 1, 1879, but did prior to the trial; that the plaintiff had done other business with the firm before August 1, 1879, besides the collection of $93 and the drawing of a deed; that the firm was not dissolved on or about August 1, 1879, but notice of dissolution was published in a Kenosha paper on or about August 7, 1879, and for three successive weeks thereafter; that *Brande* had knowledge of the correspondence between the plaintiff and Thiers before July 28, 1881; that the plaintiff sent some of the securities mentioned before March, 1880, and that the securities were sent at different times. The jury also found generally for the plaintiff, and assessed his damages at $4,183.85.

A motion to set aside the verdict was denied, and from a judgment thereon in favor of the plaintiff the defendant appealed.

For the appellant the cause was submitted on the brief of *Finches, Lynde & Miller*. They argued, among other things, that the books in the hands of the receiver, as in the hands of one of the defendants, could only be produced by petition under sec. 4183, R. S. It would have been a contempt of court for the receiver to have allowed a private person to inspect them. Private books are not subject to subpoena. 2 Wait's Pr., 523–554; *Peile v. Stoddart*, 1 McN. & G., 192; *Mansel v. Feeney*, 2 Johns. & H., 320; *Jacques v. Collins*, 2 Blatch., 23; *Iasigi v. Brown*, 1 Curt. C. C., 401; *Robbins v. Davis*, 1 Blatch., 238, 242; *Ex parte Peck*, 3 id., 113; *In re Judson*, id., 148; *Bligh v. Berson*, 7 Price, 205. Although a partnership rests on the idea of a community of profits, yet the foundation of the liability of the partners for each other consists in their mutual relation as principal and agent for each other. *Harvey v. Childs*, 28 Ohio St., 319. Such a participation of profits as will sustain such liability must be in profits as such, giving the ownership therein before division, the right to an account, and a lien on the assets in preference to individual creditors. The right to compel an account of profits is not enough. *Burnett v. Snyder*, 81 N. Y., 551; *In re Albion Life Assurance Society*, L. R., 16 Ch. Div., 88; *Campbell v. Dent*, 54 Mo., 325; *Beudel v. Hettrick*, 35 N. Y. Super. Ct., 405; *Loomis v. Marshall*, 12 Conn., 69; *Vanderburgh v. Hull*, 20 Wend., 70; *Pattison v. Blanchard*, 5 N. Y., 186; *Fitch v. Hall*, 25 Barb., 13; *Cummings v. Mills*, 1 Daly, 520; *Lowry v. Brooks*, 2 McCord, 421. Neither of the defendants had any voice in the management of the business of the other. A pooling of earnings does not make a partnership. *Insurance Co. v. Railroad Co.*, 104 U. S., 146; *Bullen v. Sharp*, L. R., 1 C. P., 86; *Holme v. Hammond*, L. R., 7 Exch., 218; *Ex parte Ten-*

Gilchrist vs. Brande, imp.

*nant,* L. R., 6 Ch. Div., 303; *Irvin v. N., C. & St. L. R'y Co.,* 92 Ill., 103; *Hill v. B., C. R. & N. R'y Co.,* 14 N. W. Rep., 249. The receipt was not a contract with the firm because the securities were not delivered, and, was therefore no evidence of a copartnership transaction. Admissions by one partner after the dissolution of the firm are not evidence as against another partner. *Baker v. Kauffman,* 9 Cow., 420; *Burns v. McKenzie,* 23 Cal., 102; *Hart v. Woodruff,* 24 Hun, 510; *Miller v. Neimerick,* 19 Ill., 172; *Thompson v. Bowman,* 6 Wall., 316; *Hamilton v. Summers,* 12 B. Mon., 11; *Flowers v. Helm,* 29 Mo., 324.

For the respondent there was a brief by *Quarles & Stebbins,* with *J. V. Quarles,* of counsel, and oral argument by *Mr. J. V. Quarles.* They argued, *inter alia,* that even if there was an error in impaneling the jury, the judgment would not be reversed. It does not appear that the jury was not impartial or that the defendant was prejudiced in any way. *Grissom v. State,* 8 Tex. App., 386; *Poulson v. Union Bank,* 40 N. J. Law, 563; *Sutton v. Fox,* 55 Wis., 531; *People v. Carrier,* 46 Mich., 442; *Herbert v. N. P. R. R. Co.,* 13 N. W. Rep., 349; *A., T. & S. F. R. R. Co. v. Franklin,* 23 Kan., 74. The instrument executed March 14, 1879, was a continuing agreement. 1 Lindley on Part., 303–404; *Smyth v. Harvie,* 31 Ill., 62; *Poole v. Gist,* 4 McCord, 259; *Alexander v. State,* 56 Ga., 478.

The following opinion was filed May 31, 1882:

CASSODAY, J. Numerous errors have been assigned, and still more numerous exceptions taken. It may be inconvenient to notice them all in detail or in the order designated.

1. It appears from the record that after twelve men were called into the jury-box the plaintiff struck one name from the list, when another juror was called, and then the defendant struck one from the list; that the striking of the jury proceeded until the plaintiff had stricken off two names

and the defendant three, whereupon a new juror was called and the list passed to the plaintiff's attorneys, whereupon they struck off one name therefrom. Thereupon the defendant objected to the calling of another juror, for the reason that the panel was then complete. The objection was overruled by the court, to which ruling and decision the defendant then and there excepted. Was this ruling error? The statute provides that "each party shall be entitled to three peremptory challenges from a full panel of jurors called in the action. The challenges shall be made alternately by the parties, one at a time, the plaintiff beginning; and when either party shall decline to challenge in his turn, he shall be deemed to have waived each time one challenge." Sec. 2851, R. S. This statute is unusually explicit and needs no exposition. The plaintiff was the first to challenge, as required by the statute. Had the challenges proceeded alternately, as prescribed, the plaintiff would first have exhausted his challenges. The record does not show, except by mere inference, that the plaintiff declined to challenge in his turn. The inference, however, is just as strong that the defendant struck the third time out of his turn. The record fails to show why the defendant had stricken off three jurors, when the plaintiff had only stricken off two. Counsel insist that the plaintiff once declined to challenge in his turn, and that he thereby waived his right, under the statute, to any further challenge, after the defendant had exhausted his challenges. But the record fails to show affirmatively that such was the fact, and discloses no objection to any challenge by the plaintiff. It does show that after the plaintiff had stricken two names from the list, and the defendant three, a new juror was called, whereupon the plaintiff struck one name from the list. But it does not appear that the defendant made any objection to the striking of such name from the list. Having failed to make such objection, he is in no position now to claim that such name

Gilchrist vs. Brande, imp.

was not rightfully stricken off. True, if the plaintiff had once declined to challenge in his turn, he thereby waived one challenge. But that did not prevent the defendant from waiving any objection to the subsequent exercise of that right by the plaintiff. By not making such objection at the time, the right to insist that such challenge was exercised out of turn comes too late. The objection made to calling another juror, after the plaintiff had thus stricken off the third juryman, "for the reason" assigned, "that the panel was then complete," was in effect insisting upon the cause being tried with the juryman on the panel who had thus been stricken off by the plaintiff. To compel the plaintiff to try the cause with such stricken juryman upon the panel, knowing the fact that he was objectionable to the plaintiff, might tend to prejudice such juryman against the plaintiff. Hence, if objection were to be made, it should have been to such exercise of the right of challenge by the plaintiff, instead of being made to the juryman leaving the box after he had thus been challenged without objection. For the reasons given we are clearly of the opinion that the objection taken was untenable.

2. It appears that, during the statement of certain objections to evidence by counsel for the defendant, the judge before whom the cause was being tried made some remarks, in answer to such objections, which the reporter did not take down, and when the counsel for the defendant called the attention of the court to the fact that the reporter was not taking down such remarks, the judge declared that it was not the practice in his circuit to require the reporter to take down all he said during the progress of the trial which had no bearing upon the questions of law or of fact being tried. And thereupon the counsel for defendant insisted that every word which was said by the judge, during the progress of the trial, in the hearing of the parties and of the jury, should be taken down by the reporter, and requested the

judge to order and direct the reporter so to do; which request was refused and defendant excepted. Subsequently the counsel for the defendant said: "I ask again, and ask counsel to bear witness, that the reporter take down what the court said during the previous objection?" Request overruled. Defendant excepted. Were these rulings error? The statute requires every judge to give to the jury his charge or instructions as written, or, when delivered orally, that they shall be taken down by the official phonographic reporter of the court; and provides, that "if any judge shall violate any of the foregoing provisions, or make any comments to the jury upon the law or facts on the trial, in any action, without the same being so reduced to writing or taken down, the judgment rendered upon the verdict found on such trial shall be reversed upon appeal or writ of error, upon the fact appearing." Sec. 2853, R. S.

The above statute is mandatory in terms, and it has been held that a failure to comply with it works a reversal of the judgment. *Penberthy v. Lee*, 51 Wis., 263. But the portion of the section thus quoted, as well as that which precedes it, only goes to the charge or instruction of the court to the jury; that is, everything the court says to the jury to guide them in their examination of the evidence, and which relates to any question of law involved in the case. *Hasbrouck v. City of Milwaukee*, 21 Wis., 217. But it is not every statement or direction made by the judge to the jury which constitutes an instruction or charge within the meaning of that provision. *Grant v. Conn. Mut. L. Ins. Co.*, 29 Wis., 125; *State v. Glass*, 50 Wis., 218. The court has gone still further, and held that a disregard of the provisions of the section which declares that "each instruction asked by counsel to be given to the jury, shall be given without change or modification, the same as asked, or refused in full," will not work a reversal where an erroneous instruction is modified so as to state the law correctly, as in such case no one can be said

to be injured.   *Mason v. The H. Whitbeck Co.*, 35 Wis., 164.

But counsel rely more particularly upon the last sentence of the above section, which reads as follows: " The judge shall require the phonographic reporter to take down all that he may say during any jury trial to the jury, *or to counsel in their presence*, of or concerning such cause." This provision was apparently first introduced by the revisers. Literally construed, it is very sweeping in its terms.  So construed, it makes it the duty of the judge to require the reporter to take down all he may say to the jury of or concerning the cause during any jury trial, and also all he may say of or concerning the cause to counsel in their presence. It does not, however, like the other provision above quoted, make every disregard of it work a reversal.  If, therefore, the former provisions are to have the liberal construction which this court has already put upon them, then, certainly, there is much stronger reason for liberally construing this last provision.  If this court was right in holding that a disregard of the former provisions should not work a reversal where no one was thereby injured or prejudiced, notwithstanding their mandatory character, then certainly we would not be justified in reversing the judgment, in the absence of such mandate, merely because there was not a literal compliance with this directory provision, in a case where there is nothing in the record indicating that the judge said anything which could in any way injure or prejudice the appellant.

It here appears that the judge made some remarks in answer to an objection by counsel to certain evidence, and upon having his attention called to the fact that the reporter was not taking down his remarks, he " declared it was not the practice in his circuit to require the reporter to take down all he said during the progress of the trial which had no bearing upon the questions of law or of fact being tried as

part of the record." This was, by implication, equivalent to a direction to take down all he said having a bearing upon the questions of law or fact being tried. It is true, counsel insist that the judge declared and the reporter took down something other and different than that quoted. That may be true, but if so, the record is not. Nevertheless, we must be confined to the record, and have no right to consider what may appear in the reporter's notes or elsewhere outside of the record. Counsel "insisted that every word which was said by the judge during the progress of the trial, in the hearing of the parties and of the jury, should be taken down by the reporter, and requested the judge to order and direct the reporter so to do." This was much broader than the statute, for that is limited to what the judge may say "to the jury, or to counsel in their presence, of or concerning such cause." Being broader than the statute, it was properly overruled. True, it does not appear that the judge in direct terms required the reporter to take down anything he said; but, as intimated, we think he did by implication. Besides, it does appear from the record that he did take down some things said by the judge even in that connection. The great difficulty here is that there is nothing in the record to indicate that the remarks made by the judge, in answer to counsel's objection, tended in any way to injure or prejudice the appellant.

Besides, it may be suggested that the trial court was one of general jurisdiction, having judicial power vested in it directly by the constitution itself. The plenary power of the legislature to define the duties of reporters, and provide for enforcing the same by stringent penalties, may be conceded. But just how far the legislature may, under our constitution, tie the tongue of a circuit judge presiding upon the trial of a cause, or compel him to give specific utterances, or enforce him to embody his communication to counsel of or concerning the cause on trial, in writing, may be

a serious question, and is one upon which we express no opinion.

3. The plaintiff put in evidence a written instrument dated March 14, 1879, executed by Brande & Thiers, which commenced by saying: "Received of *Peter A. Gilchrist* [plaintiff] the following securities for collection and reinvestment, [here they are specifically named and described, being eleven in number, and amounting in the aggregate to $7,111]. We agree to collect the above without any greater expense to *Mr. Gilchrist* than one per cent. and to make any and all new or reinvestments without expense to him.

"*Kenosha*, March 14, 1879.　　　Brande & Thiers."

At the close of the plaintiff's testimony the counsel for *Mr. Brande* moved to strike out this receipt for the reasons "that there were no securities delivered at the time of that receipt — no persons present in the office at the date of the receipt but Thiers and his brother; and there is no evidence showing or tending to show that *Brande* had any knowledge of this receipt, or the terms of it, until produced here on the trial." The motion was denied and the defendant excepted. Was this ruling error? We do not think the reasons assigned were such as to require the court to strike the receipt from the evidence. It is conceded that Brande & Thiers were partners at the time the receipt was given, and as such engaged in the business of making collections, loans, investments, and reinvestments. It is, moreover, conceded that such partnership continued to August 1, 1879. Thiers, therefore, had authority to bind the firm by contract respecting such collections, loans, investments, and reinvestments. It will be observed that the so-called receipt, was more than a receipt since it contained an agreement as to charges for making collection of the securities named, and also as to any and all new or reinvestments. The contract thus made was not a nullity, merely because the securities were not then left with Brande & Thiers. Whether the securities

were left with the defendants or taken away, no liability for services would be incurred by the plaintiff, nor right to compensation secured by the defendants, until the same should be earned by making some collection. In either event, the charges or commissions for collection, when made, were to be governed by the terms of the contract. The mere manual possession of such securities between the time of the execution of such contract and the making of such collection, therefore, in no way affected the validity of the contract. That simply depended upon the power of the one partner to bind the firm as therein stipulated. The purpose of putting the receipt in evidence was not to establish a partnership between the defendants at the time it was given. The existence of such partnership at that time, and for months afterwards, stood confessed in the answer. Nor was it relied upon to show the amount of securities belonging to the plaintiff which went into the hands of the defendants or either of them. Its simple purpose was to show that the plaintiff, at the time named, made that contract with the defendants as a firm, and that he thereafter held it as the contract of the firm. Whether *Brande* subsequently became liable to the plaintiff for failure to pay over moneys collected or securities received under the contract, would of course depend upon what subsequently occurred. If during the continuance of the partnership any collections were made by Thiers as a member of the firm under the contract, or if during such period any of the securities therein named came into his possession as such partner, then we apprehend no one would contend that the firm would not have been accountable therefor. There is no dispute but what Thiers received in pursuance of that contract moneys belonging to the plaintiff to the amount found by the jury. The real contention is whether he was in fact in partnership with *Brande* at the time of receiving such moneys, and, if not, then whether the plaintiff's relations to the de-

fendants were such that the firm was nevertheless liable to him.

These questions depended upon other evidence and considerations, which will presently be adverted to. They are merely mentioned now to show that if *Brande* is liable at all, then the contract had a bearing upon the amount of such liability, since it regulated and fixed the compensation to be paid. And if he was not liable, then it is by reason of the existence or non-existence of other evidence. The contract was pertinent to the issue, and, in connection with other testimony, tended to establish the same, and hence was properly admissible in evidence. It is no objection to evidence that it does not prove the plaintiff's whole case. If it be a link in the chain of evidence afterwards to be given, it is admissible. *Johnston v. Warden*, 3 Watts, 101. This being so, the motion to strike it out was properly overruled. Whether there was evidence sufficient to authorize a verdict against *Brande* is another question, more properly to be considered under another exception.

4. In so far as the defendants acknowledged in the receipt that they had received the securities named therein, *Brande* was not concluded, since, to that extent, it was a receipt merely, which is always open to explanation. This being so, we do not think there was any error in allowing the plaintiff to state the understanding between him and Thiers as to the holding of the securities and sending them forward for collection as they became due. Holding that the receipt was not conclusive in that respect is certainly more favorable to the defendant; for if it was conclusive, then the court would have been justified in treating the securities as having remained all the while in the possession of the firm.

5. It appears that on about August 1, 1879, a notice of the dissolution of the firm was published in a Kenosha paper. Numerous objections were taken as to the subsequent business relations of the defendants, the entries they

respectively made thereafter in what were formerly the part-
nership books, etc.   These exceptions are too numerous to
be considered in detail.   The mere publication of such notice,
however, did not preclude the plaintiff from proving that
the defendants were, as a matter of fact, still in partnership
when the moneys in question were collected.   There can be
no doubt but what the plaintiff was at liberty to prove the
continuance of such partnership by any competent evidence.
The books containing entries by *Brande* subsequently to
the alleged dissolution were properly admitted in evidence.
*Champlin v. Tilley*, 3 Day, 307; *McNeill v. Reynolds*, 9
Ala., 313; *Johnston v. Warden, supra; Alderson v. Clay*, 1
Starkie, 405; 1 Lindley on Part., 92 *et seq.*   They were clearly
competent in connection with the testimony of the clerk
and the other evidence in the case.   *Moyes v. Brumaux*, 3
Yeates, 30; *Frick v. Barbour*, 64 Pa. St., 120.   Positive proof
of the existence of a partnership is not indispensable, for
that may be implied from circumstances.   *Kelleher v. Tis-
dale*, 23 Ill., 405; *Gilpin v. Temple*, 4 Harr. (Del.), 190;
*State v. Wiggin*, 20 N. H., 449.   The fact that no petition
or special order was made for bringing the books into court
in no way affected the question of their admissibility.

6. We cannot go into any analysis of the evidence, but
after a very careful reading of all the testimony we are
forced to the conclusion that there was sufficient evidence
on the part of the plaintiff, assuming it to be true and undis-
puted, to justify the jury in answering the several questions
in favor of the plaintiff and against the defendant *Brande* as
they did.   This being so there was no error in denying the
motion for a nonsuit, nor in denying the motion to set aside
the verdict and for a new trial.

7. But were it assumed that the defendants in fact dis-
solved partnership August 1, 1879, yet the failure of *Mr.
Brande* to notify the plaintiff of the fact before the money
or securities were thereafter received by Thiers, would still

present a serious obstacle to his escaping liability in this action. The plaintiff's contract was confessedly with the firm. The plaintiff's dealings subsequent to the alleged dissolution were with Thiers as a member of the firm. This is abundantly shown by the letters in evidence. According to the plaintiff's testimony, *Brande*, as a member of the firm, had done business for him previously. According to his testimony he negotiated with *Brande* in regard to such collections before making the contract. It stands admitted that a collection of $93 was made on one of these securities in May, 1879, and that the plaintiff wrote to *Brande* personally about remitting the amount as early as June 11, 1879. It appears from the testimony of Blackman that he talked with *Brande* in respect to getting the plaintiff to exchange the mortgage he held against him for another, so that the witness could pay up the former. If this testimony was true, *Brande* must necessarily have known that the firm were agents of the plaintiff with respect to such securities and the collection of the same. Under these circumstances it was incumbent upon *Mr. Brande* to bring notice of such alleged dissolution home to the plaintiff in order to escape liability. The rule is well established that "publication of notice of the dissolution of a partnership in a newspaper, at the place where the business is carried on, is not sufficient to relieve a retiring partner from liability for subsequent transactions in the firm name with one having dealings with the firm prior to the dissolution. In such case notice must be brought home to the dealer, or it must appear that facts came to his knowledge sufficient to advise him or to give him reason to believe that a dissolution has taken place." *Austin v. Holland,* 69 N. Y., 571; *Zollar v. Janvrin,* 47 N. H., 324; *Lyon v. Johnson,* 28 Conn., 1; *Little v. Clarke,* 36 Pa. St., 114; *Kenney v. Altvater,* 77 Pa. St., 34; *Johnson v. Totten,* 3 Cal., 343; *Ennis v. Williams,* 30 Ga., 691; *Hutchins v. Hudson,* 8 Humph. (Tenn.), 426; *Prentiss v. Sinclair,*

5 Vt., 149; *Dickinson v. Dickinson*, 25 Grat., 321; *Laird v. Ivens*, 45 Tex., 622.

This rule has even been extended to a dormant partner, where the creditor, dealing with the supposed firm, had previously known that such dormant partner was a member thereof. *Farrar v. Deflinne*, 1 Carr. & K., 580; *Park v. Wooten's Ex'rs*, 35 Ala., 242. It is true, the defendant was not bound to prove formal notice to the plaintiff. Any notice which reached the plaintiff in any way so as to advise him of the fact of dissolution, or which was sufficient to put him upon inquiry, was sufficient. *Young v. Tibbitts*, 32 Wis., 79. It has been held that the publication in a newspaper taken by the plaintiff at the time, is a fact from which the jury may infer actual notice, but that it is not conclusive. *Treadwell v. Wells*, 4 Cal., 260. Here there was some evidence that the plaintiff had taken the paper off and on in which the notice of dissolution was published, but he positively testified that he had no knowledge or information of any dissolution of the firm of Brande & Thiers prior to the receipt of the letter from *Brande*, dated July 28, 1881, and his testimony is corroborated by the letters written by Thiers. Whether this testimony was true or false was for the jury to determine. They have determined it in favor of the plaintiff. That determination is conclusive upon this court that the dealings of the plaintiff in question after August 1, 1879, were with the firm and not with Thiers individually. The facts and the law being as stated, the nonsuit was properly denied, and the motion to set aside the verdict and for a new trial properly overruled, even upon the assumption that the firm in fact dissolved August 1, 1879.

8. It is urged that the letters written by Thiers in the name of the firm, after the alleged dissolution, were improperly received in evidence. If we are right in holding that the evidence on the part of the plaintiff, assuming it to be true and undisputed, was sufficient *prima facie* to estab-

Gilchrist vs. Brande, imp.

lish the continuance of the partnership, notwithstanding the published notice of dissolution, then, we apprehend, there can be no serious controversy about the admissibility of the letters. Evidence sufficient to raise a presumption of the continuance of the partnership having been given, the acts of Thiers were admissible against *Brande*, for the purpose of strengthening the *prima facie* case so established. *Allen v. Owens*, 2 Speers, 170, and 1 Lindley on Part., 94, and cases there cited. But even if the firm in fact dissolved August 1, 1879, yet the letters were admissible, not for the purpose of proving the continuance of the partnership in fact, but for the purpose of showing that the plaintiff in good faith supposed he was still dealing with the firm when he sent forward his securities for collection. *Price v. Towsey*, 3 Litt. (Ky.), 423; *Benjamin v. Covert*, 47 Wis., 375; *S. C.*, 55 Wis., 157.

9. Thiers, having obtained the money in the name of the firm, and in the usual course of business in which the firm had been engaged, the defendant *Brande* cannot escape liability on the ground that Thiers, without his knowledge, fraudulently converted the money to his own use. *Wolf v. Mills*, 56 Ill., 360; *Alexander v. State*, 56 Ga., 478; *Fletcher v. Ingram*, 46 Wis., 191; 1 Lindley on Part., 302, and cases there cited.

10. There is no claim that the agreement between the plaintiff and his attorneys was champertous, within the rule as settled by this court. *Kusterer v. Beaver Dam*, 56 Wis., 471; *Allard v. Lamirande*, 29 Wis., 502, and cases there cited. In *Allard v. Lamirande* it was held that "an attorney at law may contract to render services in the conduct of a suit for a fee contingent upon his success therein." The plaintiff's attorneys here seem to have made such a contract. That, however, did not make them parties to this action, nor open the door to irrelevant testimony as to their personal treatment and alleged persecutions of the defendant *Brande*.

11. Several other exceptions were taken to the exclusion of evidence, but, with the view of the issues which we have already expressed, it seems to be unnecessary to consider them separately, and point out the irrelevancy of each, for they will readily occur to the learned counsel who has so ably and vigorously sought to relieve his client from what may possibly be an unjust burden, which the law and the evidence have cast upon him by reason of an unfortunate partnership.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon a motion for a rehearing counsel for the appellant argued that the receipt in evidence was not a *contract* without a delivery of the securities mentioned therein. *Pollard v. Vinton*, 105 U. S., 7; *Alcorn v. Morgan*, 77 Ind., 185; *McKernan v. Mayhew*, 21 Ind., 291; *Stewart v. Phoenix Ins. Co.*, 9 Lea, 104. And it was error to admit evidence varying the contract as written. The evidence admitted makes a new and distinct contract, changing entirely the relations of the parties. *Schweitzer v. Connor*, 57 Wis., 177; *Wiener v. Whipple*, 53 id., 303; *Langdon v. Langdon*, 4 Gray, 186.

The motion was denied September 11, 1883.