DAVIS, Respondent, vs. DREGNE and another, Appellants.

*November 19—December 11, 1903.*

*Master and servant: Personal injuries: Negligence: Improper remarks by court: Court and jury: Instructions to jury: Appeal and error: Exceptions: Material error.*

1. In an action for personal injuries against a father and his son, for negligence of the son, alleged to be the servant of the father, the court in denying a motion for a non-suit, and in the presence of the jury, made remarks from which the jury and bystanders would naturally infer that, in the opinion of the court, the testimony of defendants was unworthy of credit, and that no one in the court room would believe them. The court at the time, and later in the instructions to the jury, cautioned the jury not to be influenced by such remarks, as they were intended merely for counsel, and not for the jury. *Held,* that while such remarks were objectionable, they would not work a reversal for want of exception thereto.

2. In such case, the court in its instruction to the jury on the question as to whether plaintiff had used ordinary care, used language from which the jury might infer that, in the opinion of the court, the plaintiff had done everything that the law required him to do, and that his statement as to what he did was a verity in the case, and must be accepted as true by the jury. *Held,* when considered in connection with the court's remarks on the motion for a nonsuit, that the court invaded the province of the jury, and thereby defendants were prejudiced.

APPEAL from a judgment of the circuit court for Vernon county: J. J. FRUIT, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries sustained by the plaintiff by reason of being struck by a team

belonging to the defendant *John S. Dregne,* and being driven by his son, the defendant *Sylvester Dregne,* at a street crossing in Viroqua about seven o'clock on the evening of February 22, 1902. Issue being joined and trial had, the jury, at the close thereof, returned a special verdict to the effect (1) that the defendant *Sylvester* was the servant of the defendant *John S.* on February 22, 1902; (2) that the defendant *Sylvester* was acting within the scope of his employment while engaged in driving the team at the time he collided with the plaintiff on the crossing on the evening of February 22, 1902; (3) that the defendant *Sylvester* was wanting in ordinary care in driving and managing the team immediately prior to and at the time he collided with the plaintiff on the crossing; (4) that such want of ordinary care in driving and managing the team was the proximate cause of the plaintiff's injury; (5) that the plaintiff was using ordinary care in attempting to pass over the crossing at the time of the accident; (6) that they assessed the plaintiff's damages at $900. From the judgment entered thereon accordingly for the amount stated, the defendants bring this appeal.

For the appellants there was a brief by *C. W. Graves* and *C. M. Butt, Jr.,* and oral argument by *Mr. Graves.*

*Silbaugh & Bennett,* for the respondent.

CASSODAY, C. J. 1. It is claimed that the evidence is insufficient to support the findings of the jury to the effect that the defendant *Sylvester* was the servant of his father at the time of the injury, and that he was acting at the time within the scope of his employment, and hence that a nonsuit should have been granted in favor of the defendant *John S. Dregne.* The evidence in support of such findings is mostly circumstantial. *Sylvester* was twenty-two years of age at the time, unmarried, and lived at his father's house, and voluntarily did some work about the farm, but received no wages, and was engaged in raising tobacco on shares on his father's farm.

We cannot say that such findings of the jury are unsupported by the evidence, when considered in the most favorable light it will legitimately bear in favor of the plaintiff. *Renne v. U. S. Leather Co.* 107 Wis. 320, 83 N. W. 473. As there must be a new trial, we refrain from discussing the evidence bearing upon the questions suggested, or the inferences to be drawn from such evidence.

2. It is claimed that, in denying the motion for a non-suit, the trial judge made remarks in the presence of the jury which were prejudicial to the defendants. Such remarks cover nearly two pages of the printed case. We quote some of them:

"It is true, the boy says he drove the team; but the presumption would be, in the absence of any evidence to the contrary, that he was acting there for his father. So the court will let the jury say, under all this evidence, whether they would believe the boy's statement and his father's—taking their manner on the stand—and let them pass upon it. . . . *Every one* would naturally look at it in a common sense view—that the boy came along with his father, driving the team; that he acted as the servant and agent of his father. *There is not a man in the courtroom* who has heard the boy's testimony but would think for a moment that the boy brought the father to town. They would say that the boy came along with his father. . . . Take the boy's statement. He says he borrowed the team on this occasion. The father and son came here together; and, as I say, take these facts altogether— the fact that he lived there at home, and had driven out before with his father and other members of the family—the presumption would be, from these statements, that he acted for his father. . . . So, taking this transaction and these statements of their coming here, the court is going to let the jury say, under all this evidence, whether they would believe this boy's statement, and his father's, taking their manner of testifying on the stand. Defendants' Counsel: Doesn't the court believe there was a bailment of this team? Court: You have asked me the question, and I will say that, from the manner of these parties on the stand, the court does not believe it. It may be so."

The only portion of such remarks excepted to is the answer to the direct question put to the court by counsel for the defendants. As soon as such exception was taken, the court cautioned the jury not to be influenced by such remarks, as they were intended merely for counsel, and not for the jury. Such caution was reiterated in the general charge. Such remarks of the court were undoubtedly made without considering the effect they would naturally have upon the jury. And yet it is very obvious that such remarks must have deeply impressed the jury. They were told, in effect, that everybody would naturally believe from the testimony of the defendants "that the boy came along with his father, driving the team; that he acted as the *servant and agent of his father;*" that there was "not a man in the courtroom," who had heard the boy's testimony, that "would think for a moment that the boy brought the father to town," but they "would say that the boy came along with his father;" and it was repeatedly said that, from the boy's testimony, it would be presumed that the boy "acted for his father" in driving the team. From such remarks the jury and the bystanders would naturally infer that, in the opinion of the court, the testimony of the defendants was unworthy of credit, and that no one in the courtroom would believe them. And so when the direct question was put to the court, it was frankly stated "that, from the manner of" the defendants upon the stand, the court did not believe them. This court has repeatedly applied liberal rules to the remarks of trial judges in the presence of the jury. *Gilchrist v. Brande,* 58 Wis. 184, 192–195, 15 N. W. 817; *Stiles v. Neillsville M. Co.* 87 Wis. 271, 58 N. W. 411; *Baker v. State,* 88 Wis. 156, 59 N. W. 570; *Owen v. Long,* 97 Wis. 83, 72 N. W. 364. While we would be unwilling to reverse the judgment merely because the court, in answer to a direct question put by counsel for the defendants, expressed an opinion that their testimony was unworthy of credit, yet it is obvious that it must have made a deep impression upon

the jury, especially in connection with the remarks of the court which preceded. Such remarks had a direct bearing upon the vital controversy in the case. Notwithstanding the fact that such remarks were very objectionable, yet they do not constitute reversible error, for want of exception. *Lowe v. State,* 118 Wis. 641, 96 N. W. 417–421, and cases there cited.

3. Exception is taken to a portion of the charge to the jury on the question whether the plaintiff was using ordinary care in attempting to pass over the crossing at the time of the accident, as follows:

"You have heard the old gentleman's testimony, both on his direct and cross examination, as to what he did. He tells you that when he got near Court street corner, at Fortney's Hotel, that he stopped a moment; that he looked and listened, and that he did not see any team in sight; and that he proceeded on an average gait, such as he was in the habit of using, to cross this street at the proper crossing at the time. . . . *What would you have had him do, any more than he did do?"*

This left the jury to infer that, in the opinion of the court, the plaintiff had done everything that the law required him to do, and that his statement as to what he did was a verity in the case, and must be accepted as true by the jury. This, we think, was invading the province of the jury, especially when considered in connection with the remarks of the court on the motion for a nonsuit, to which attention has already been called. Taken together, the jury would naturally infer that the court was of the opinion that the plaintiff was worthy of credit, and that his testimony would be accepted as true, but that the testimony of the defendants was unworthy of credit, and contrary to the presumptions arising from their own testimony. The defendants were entitled to a fair trial by an unprejudiced jury. We do not think they have had such a trial.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.