CALIN *v.* MARCOVICH ET AL.

[No. 13,213. Filed March 7, 1929.]

*Ibach, Gavit, Stinson & Gavit,* for appellant.
*Tinkham & Galvin,* for appellees.

REMY, J.—Marcia Calin, a Roumanian, who had re-sided in this country for many years, having decided to return to the land of his nativity, and desiring a bill of exchange for $1,100, called upon W. Marcovich and Sons, appellees herein, dealers in foreign exchange with offices in the city of East Chicago, and procured a draft payable to himself, drawn upon a Roumanian bank in which appellees had an account aggregating more than the amount of the draft. At the time Marcia Calin went to appellees' place of business to procure the draft, he was accompanied by his nephew Sam Calin, appellant herein. As a part of the transaction, and on payment of $1,133, which included $33 as a fee for services, appellees issued the following written instrument:

"Customers receipt. Date July 3, 1924.
"No. 10,235. Amt. $1,100 at $33. Purchaser Sam

Calin, Address————————. Order Marcia Calin.
Drawn on Banca Albina, Sibiu, Roumania.

"W. Marcovich & Sons, International Banking,
"(Sig.)   M. H. Marcovich."

This instrument, when prepared, was delivered to appellant.

Taking the draft issued to him, Marcia Calin proceeded to Sibiu, Roumania, being accompanied by appellee Wolf Marcovich, who happened to be making the trip at the same time.   A few days after his arrival at Sibiu, Marcia Calin died, without having indorsed the draft or presented the same to the Roumanian bank for payment. After the death of Marcia Calin, a controversy arose between his widow and a sister of appellant as to the ownership of the draft, and appellee Wolf Marcovich went to the bank on which the draft was drawn and directed that the draft be not paid, stating at the time that the draft was cancelled.   Whereupon the money of appellees on deposit in the bank was attached in a legal proceeding instituted by the legal representative of Marcia Calin.

Appellant, having learned of the death of his uncle and that the bank had been directed by appellee Wolf Marcovich not to pay the draft, commenced this action against appellees.   Complaint is in three paragraphs. First paragraph is based upon the above written instrument, and is upon the theory that appellees had thereby agreed with appellant to transmit the amount of the draft from East Chicago, Indiana, to Sibiu, Roumania, and that the money was not transmitted as agreed; second paragraph is for money had and received; and third for conversion.   Complaint was answered by denial, and a trial resulted in a finding and judgment for appellees.

On the trial, the facts as above stated were all es-

tablished by the evidence, and are not in dispute. The only issue on which there was controversy was as to the purchaser of the draft. Out of this controversy arose the only question presented by this appeal which it is necessary to decide.

It is the contention of appellant that the "customer's receipt," delivered to him at the time of the transaction, is in fact a contract, that it shows on its face that he was the purchaser of the draft, that, being a contract, it cannot be varied by parol evidence, and, on the issue presented by the pleadings, is conclusive. On the other hand, it is contended by appellees that the instrument is a mere receipt, evidencing the fact that a contract was made by appellees with the payee of the draft; that, being a receipt and not a contract, parol evidence was admissible to show the intention of the parties. The trial court ruled with appellees, and, over appellant's objection, evidence was admitted tending to show that appellant was not, in fact, the purchaser, but was named as such in the receipt, and the draft delivered to him, at the suggestion of appellees as a protection to the payee, in this, that if the draft should be lost, he, as holder of the receipt, could procure a duplicate.

In our view, the trial court did not err in its interpretation of the instrument, and in the admission of the evidence as to the intention of the parties. There are in the instrument no words importing a contract to do anything or to refrain from doing anything. It is merely an acknowledgment that a contract had been made.

The case of *Long* v. *Straus* (1886), 107 Ind. 94, 6 N. E. 123, 7 N. E. 763, 57 Am. Rep. 87, cited and relied on by appellant, is not analogous. The receipt under consideration in that case was for the deposit of money with a bank, and the words "on deposit" used in the receipt implied a promise on the part of the bank to

return the money to the depositor in accordance with the custom of such institutions. In the instant case, there is no promise made by either party to the receipt, nor can a promise be implied from the instrument.

See *Sherry* v. *Picken* (1858), 10 Ind. 375; *McKernan* v. *Mayhew* (1863), 21 Ind. 291.

Affirmed.