## BRYANT *vs.* THE STATE OF GEORGIA.

1. Where, on a certain Monday evening, a person was carried to jail under a charge of burglary, and there incarcerated, but no warrant was produced, and it did not appear who carried him there, but he showed signs of having been beaten, and died from the effects of the wound on Wednesday of the following week, and where, on the Friday after his incarceration, he stated that he was going to die, and that a clan of men had taken him and whipped him with a buggy trace, defendant being one of the crowd, there was no error in admitting these statements as dying declarations, although the witness who narrated them testified that he thought the deceased was in no particular danger when he made the statements, and although a certain doctor, who was sent for on Monday before he died, testified that he thought he would have recovered under proper treatment.

2. If it was error to charge as to manslaughter and its different grades, it did not hurt the defendant, but was a benefit to him.

3. Newly-discovered evidence of a person who was present in court at the trial assisting the defendant in selecting a jury, but who was not introduced as a witness, furnishes no ground for a new trial, nor does the newly-discovered evidence of a person who was present at the time of the commission of the offence, and who would testify that the defendant did not engage in it; as the defendant knew this as well before the trial as afterwards, and it did not appear that he made any effort to procure the attendance of the witness, or moved for a continuance on the ground of his absence.

4. Where, in addition to a statement in a dying declaration that the offence was committed in the county where the trial took place, it was also stated that the deceased was taken at a certain named store and was whipped "over there," in certain woods, there was sufficient evidence as to the venue without relying upon the dying declarations to prove it.

November 26, 1887.

Criminal law. Evidence. Dying declarations. Charge of court. New trial. Venue. Before Judge LUMPKIN. Madison superior court. March term, 1887.

Reported in the decision.

F. H. COLLEY, D. W. MEADOW, J. J. STRICKLAND, LUMPKIN & BURNETT and J. H. LUMPKIN, for plaintiff in error.

W. M. HOWARD, solicitor-general, for the State.

BLANDFORD, Justice.

Toombs Bryant, the plaintiff in error, together with others, was indicted in the superior court of Madison county for the offence of murder. He was convicted of involuntary manslaughter in the commission of an unlawful act; whereupon he moved for a new trial, which motion was overruled by the court below.

Upon the trial of the case, the State introduced certain statements of the deceased, as dying declarations, and these declarations were admitted by the court to the jury. This is assigned as error. Other grounds of error are, that the court erred in charging that part of the penal code which relates to manslaughter and its grades, and in not granting a new trial on the ground of newly-discovered evidence.

1. In this case the testimony is very meagre. The defendant introduced no testimony, but relied upon his statement. The State introduced the testimony of certain physicians, who testified that the deceased was in jail when they examined him first, and that they found upon his body bruises which appeared to have been inflicted by some blunt instrument; and that they also made an examination after his death and found bruises on his abdomen; and one of the physicians testified that these bruises produced what is called *peritonitis* and convulsions, from which the deceased died.

The jailer, who was also the deputy sheriff, testified that the deceased was brought to the jail under the charge of burglary, no warrant being produced for his commission to jail; and it was not stated who brought him. He was brought there on a Monday evening and died Wednesday of the following week. The witness saw the deceased on the Friday after he was brought to the jail, and the deceased then made many complaints as to his condition, and stated that he was going to die; and furthermore stated that a

v-80—18.

clan of men had taken him and whipped him with a buggy trace; that the accused, Toombs Bryant, was one of the ·crowd; and that it occurred in the county of Madison, at :a certain store,—Seymour's store, and that they had ·whipped him " over there," in certain woods. Objection was made to these statements on the ground that they ·were not dying declarations. The court, however, thought the declarations themselves, and the circumstances surrounding them, were sufficient to authorize them to go to the jury as dying declarations.

It is true that this witness (who seemed not to want to know anything more about this transaction than he could help) said he though the deceased was in no particular danger when he made these statements; and the doctors, who were sent for on Monday before the Wednesday on which he died, said they thought that by proper treatment he would have gotten well; yet the deceased himself stated that he was going to die, and he did die; and it showed that he knew more about it than these physicians or the deputy sheriff. It does not appear that he was treated by the physicians, the jailer or anybody else. He was put into the jail lacerated and torn by the buggy trace, and left there to die. The fact that he died from these wounds is unquestionable. We think there was sufficient evidence to authorize the court to admit this testimony to the jury, and for the jury to have considered whether, under the circumstances, these were dying declarations or not.

2. We do not think the plaintiff in error can object to the charge of the court as to manslaughter and its different grades; it did not hurt him, but was a benefit to him. If it was error, it was not an error that hurt the accused. Where a set of men, pretending to be a constable's *posse*, arrest a man and take him off, and whip him in a manner to cause his death, it looks very much like murder, and not manslaughter.

3. The next ground relied upon was that of newly-discovered evidence, the same consisting of the testimony

of one Hutchinson and one Cheatham. It appears, by the certificate of the presiding judge, that Cheatham was present in court assisting the accused in selecting his jury, but was not introduced as a witness. So we do not think there is anything in this ground, so far as this witness is concerned. And we think the ground as to Hutchinson is equally futile. It was stated in the motion for new trial that the accused expected to prove that Hutchinson was present at the time the whipping was charged to have occurred, and that he (the accused) did not whip the deceased. He knew this, however, as well before the trial as afterwards, and it does not appear that he made any effort to procure the attendance and testimony of Hutchinson on the trial of the case. He showed no diligence, and did not move for a continuance on the ground of the absence of this witness.

4. Another ground urged by the plaintiff in error was, that it did not appear that the crime had been committed in Madison county, except by the statement of the deceased, who said the whipping was done in that county. But there are facts and circumstance shown here by other witnesses, in addition to the statement of the deceased, to show that it was done at a certain place. A certain store and certain woods were alluded to. The jury had a right to infer, from the testimony before them, whether it was done in the county of Madison. The knew all the facts, and the maxim *vicini vicinorum præsumuntur scire* applies in this case. The jury were from the vicinage, and were presumed to know all about .it. And independent of the declaration of the deceased that it was in Madison county, they had sufficient evidence before them to determine where the act was done.

This disposes of all the question made by the record. The judgment of the court below in refusing a new trial is affirmed.