SNELLING *v.* THE STATE.

Where the most favorable view for the defendant charged with murder is, that he killed a private citizen who was attempting to arrest him for felony for which he had been indicted three years before (the deceased being in fact an officer, but not disclosing his character as such and not exhibiting or mentioning the warrant which he had), and where all the circumstances show that the defendant must have apprehended the arrest and realized the in-

tention of the arresting party, such purpose having been dis-
tinctly stated by the deceased as he approached, upon the uttering
of which statement the defendant fired upon him, a verdict of
guilty is not contrary to law or evidence.   (R.)

April 24, 1891.   Argued at the last term.

Criminal law.    Murder.    Arrest.    Before Judge
LUMPKIN. Randolph superior court. Special term, July,
1890.

Reported in the decision.

J. W. WALTERS and HARRISON & PEEPLES, for plaintiff
in error.

J. M. GRIGGS, solicitor-general, *contra*.

CLARKE, Judge.*

At a special term of Randolph superior court held in
July, 1890, Sam. Snelling, the plaintiff in error, was
convicted of the murder of Ed. Skipper.    He moved
for a new trial, setting forth as the only grounds of
such motion that the verdict was contrary to the evi-
dence and contrary to the law.    The motion was de-
nied, and its denial is the error here assigned.

The evidence introduced by the prosecution was sub-
stantially as follows :   In 1884 a bench-warrant was
issued from the superior court of Randolph county for
the arrest of said Snelling for murder, he having been
indicted in that court for such offence.    On May 17th,
1887, the sheriff placed this warrant in the hands of the
deceased for the purpose of execution.    He is men-
tioned in the evidence as "a bailiff of the county," "of-
ficer of the justice court here—arresting officer," and
jailer of the county.    Shortly after nine o'clock in the
morning of that day, Skipper left Cuthbert to make the
arrest, being accompanied by Joe Standley and N. A.
Burge.    Their interest in the matter was to secure a
reward which had been offered for the apprehension of
Snelling.    These men were all armed, Skipper and

*LUMPKIN, J., being disqualified, Judge MARSHALL J. CLARKE, of the Atlanta
circuit, presided in his stead.

Burge each having a double-barrel shot-gun, and Standley a Winchester rifle. Skipper took one route for the house where Snelling was supposed to be, and Standley and Burge another. The three met at the house. This was simply a single room with a front and rear door, and a window in one end. The house was "pretty high" above the ground, and steps led up to the front door which opened towards the inside. Skipper took position at the front door, Burge at the rear door, and Standley at a corner which commanded a view both of the front door and window. Skipper three times ordered that the door be opened. The only response was from a little girl who said there was "nobody in there." "He then caught hold of the door-knob, turned it and pushed, and the door flew open." After the door opened he entered the house and said to Snelling, "Get up and consider yourself under arrest." When these words were spoken, Snelling fired a pistol at Skipper, the ball of which entered his stomach. Standley then ran to the door and sprang into the house. As he did so, the pistol was fired a second time, and Snelling and Skipper then had hold of each other. The latter's gun was on the floor with the barrel pointing to the door. Skipper cried, "Help, he has killed me." Standley made an ineffectual effort to use his gun, when Snelling fired at him, shooting him in the shoulder. This disabled Standley so that his gun fell to the floor. It fired as it fell. Snelling then shot at Standley a second time, inflicting another wound, and then again, the last time missing his aim. Standley was still unable to discharge his gun, though "he cocked it once or twice and snapped it." Snelling was still "snapping" his pistol at Standley. He turned to the door and let himself down. Here Burge came up, and some dozen words were exchanged between him and Standley. About this time Skipper fell backwards out of the door. At

the same time Snelling leaped through the door and fled. Skipper neither spoke nor moved after he fell. He expired in five minutes. Upon examination it appeared that his gun had not been fired. When the shooting occurred, the only person in the house besides the three men was a negro girl about nine or ten years old. No evidence was tendered on the part of the defendant. He made a statement which was, in substance, that on the occasion in question he was asleep in his wife's house, that the noise of some one breaking into the house awoke him, that the first thing he saw was a man in the house presenting a gun at him, that he thereupon shot at the man, that the man again presented the gun and defendant again shot, that about this time another man entered with a gun, that neither of the men said anything to him, and that what he did was for his own protection. He mentioned further that he did not know how many shots he fired, and that he escaped after he had fired the last one. The State having introduced a witness who testified that defendant had told him that Skipper had shot him, defendant, with a double-barrel shot-gun before he fired at all, defendant made a supplemental statement in which he said that he was shot in the difficulty, and with buckshot, and pointed out to the jury the place where he was struck.

Under the evidence the most favorable view of the case for the defendant is, that he killed a private citizen who was attempting to arrest him for the commission of a felony. This view may well be taken, for the officer did not disclose his character as such, and did not exhibit or mention the warrant which he had. Supposing the facts to be thus, is there anything to relieve the defendant of the guilt of murder? We think not. A private person had a legal right to make the arrest. "If the offence is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him

upon reasonable and probable grounds of suspicion."
Code, §4724. This defendant's offence was a felony
for which he had been indicted three years before. Nor
could he shield himself from the effect of the situation
by a claim that he acted in ignorance of the purpose of
the person attempting the arrest. This purpose was
distinctly announced by the first and only words which
were addressed to him by the deceased. This evidence
cannot be overcome and needs no support. If it needed
aid, it could well receive it from the circumstances of
the defendant when the killing occurred. He was in
the county where the felony had been perpetrated, and
there as a fugitive from justice. He must have appre-
hended the very thing which occurred, and might rea-
sonably have supposed the attack on his home to have
been made with that design. It is easy to believe that
he did at once realize the intention of the arresting
party. The response of the little girl to the demand for
admission to the house is significant in this connection.
The state of preparation in which he was found and the
promptness and vigor with which he availed himself
of such preparation mean much in explaining the state
of his mind. If, then, Skipper as a private citizen had
authority to apprehend the defendant, and the defend-
ant knew that Skipper's purpose was to arrest him, it
was, of course, his duty to submit. The law would not
tolerate in him any form or degree of resistance, and
most certainly we cannot discover the slightest excuse
for the sanguinary and fatal resistance to which he did
resort.

The following decisions of this court were cited by
counsel for defendant, to wit: *O'Connor* v. *The State*,
64 *Ga.* 125 ; *Phillips* v. *The State*, 66 *Ga.* 755 ; *Davis* v.
*The State*, 79 *Ga.* 767 ; and *Croom* v. *The State*, 85 *Ga.*
718. We have examined in full each one of these
cases, and fail to find any adjudication at variance with

this opinion. Indeed, the one last named states more strongly and clearly than the writer can the doctrines upon which we rest the present decision.

*Judgment affirmed.*