## HARPER v. THE STATE.

1. In a prosecution for the homicide of an arresting officer, evidence which tends to show that the purpose of the deceased was to effect an arrest, and that the slayer was a fugitive from justice, is competent.

2. Resolving any possible doubt, as to the admissibility of parol evidence to prove the contents of a collateral writing, in favor of the defendant, under the facts of this case (even if error was committed) it was harmless.

3. The evidence submitted to the court was sufficient to show that the dying declarations were made in articulo mortis, and that the declarant was, at the time, conscious of his condition, and there was no error in submitting them to the jury. The charge of the court on the subject of dying declarations was not open to the objections made against it.

4. Where it was shown that the bullet which inflicted the wound was metal-jacketed, and the wound was infected, it was proper to allow an expert to testify that a bullet of that character would produce infection, and that an inflammatory condition would follow.

5. "It was not error to inform the jury that the prisoner was not subject to be cross-examined on his statement without his consent."

6. In a prosecution for homicide, where the State omits to offer a witness who was present at the place of the homicide, but who is not shown to have seen the killing, and relies on circumstantial evidence, incriminating admissions, and the dying declarations of the deceased, to establish the defendant's guilt, and where the witness is in court accessible to the defendant, it is not error for the court to refuse to charge the Penal Code, § 989, relating to the "presumption arising from failure to produce evidence."

7. An officer may arrest an escaped felon without a warrant; and if such escaped felon slay the officer, without notice of his official character, solely to prevent an arrest, the crime is murder.

* Argued November 18,—Decided December 21, 1907.

Indictment for murder.  Before Judge Fite.  Murray superior court.  September 9, 1907.

*Griffin & Attaway* and *W. W. Sampler,* for plaintiff in error.

*John C. Hart,* attorney-general, *Samuel P. Maddox,* solicitor-general, *C. L. Henry, C. N. King,* and *George G. Glenn,* contra.

EVANS, P. J. John Harper was convicted of the murder of Ben C. Keith, and excepts to the court's refusal to grant him a new trial. The proof submitted by the State disclosed that the homicide occurred under these circumstances: A warrant had issued from the superior court of Fannin county against the defendant, for a murder alleged to have been committed in that county in December, 1906. He had eluded the officers of Fannin county and had taken refuge in Murray county, passing under an assumed name. The deceased was the sheriff of Murray county, and had been pointed out to the defendant as such. The deceased received notice that the defendant was domiciled at a certain house in Murray county, and was wanted by the authorities of Fannin county to answer to the crime of murder. Accompanied by a posse, on July 25, 1907, the sheriff went to the house where the defendant was staying, to effect his arrest. The defendant was not at the house, and the sheriff and posse stationed themselves so as to keep the house under surveillance. The deceased and a young man named Foster concealed themselves behind a stump. About nine o'clock at night the defendant came along the highway and was commanded by the sheriff to halt. As soon as the sheriff called upon him to halt he fired upon the sheriff. The sheriff returned the fire. The defendant fired two or three times, inflicting a mortal wound, which caused the sheriff's death three or four days later. The defendant was immediately taken in custody. He was armed with a very large pistol, loaded with metal-capped bullets. He was asked why he carried the pistol, and replied "that he didn't aim to go back to Fannin county, and aimed for that gun to defend him." He said that he shot the deceased to get away from him.

1. The court allowed in evidence a postal card, containing an offer of reward for the arrest of the defendant, who was said to be wanted in Fannin county for the assassination of J. A. England on December 21, 1906. The postal card gave a minute description of the defendant. The card was unsigned. Objection was made to the card being received in evidence, on the ground that it was irrelevant, and that the statement in the card that the defend-

ant was wanted for assassinating one England was calculated to arouse the prejudice of the jury. It was shown that this card had been given to the deceased. The State submitted evidence tending to show that the defendant had escaped from Fannin county, and was evading arrest for a crime committed in that county. The deceased was the sheriff of the county where the fugitive had taken refuge. The offense committed by the fugitive was a felony; and the sheriff or any private person may lawfully arrest a fugitive felon upon reasonable and probable grounds of suspicion of his guilt. Penal Code, §900; *Snelling* v. *State*, 87 *Ga.* 50 (13 S. E. 154). Upon proof that the deceased was acting upon information derived in part from this postal card, it was admissible as explanatory of the conduct of the deceased at the time of receiving his mortal wound. The denomination of the homicide as an assassination would not render the card inadmissible.

A bench warrant against the defendant, issued from Fannin superior court, upon an indictment for murder, was allowed in evidence. The warrant was admissible as one of 'the elements tending to show that the defendant was a fugitive from justice. The language of Lumpkin, J., in *Smalls'* case, 99 *Ga.* 31 (25 S. E. 614), is peculiarly appropriate to the facts of the present case: "The vitally controlling issue in the case was whether, in committing the homicide, the accused was resisting a lawful attempt to arrest him, or in good faith making a defense against an unlawful assault upon himself, or what he honestly believed was such an assault. The motives of the accused were directly in issue, and any evidence fairly illustrating or throwing light upon the same was competent as being explanatory of his conduct under the surrounding circumstances."

2. The court allowed a witness, the sheriff of Fannin county, to testify that he received a telegram from one Russell, asking if the defendant was wanted in Fannin county for murder, and that he replied that the defendant was wanted. The objection to this testimony was that the telegrams were the best evidence of their contents. Mr. Russell, who sent the telegram of inquiry, and received the reply, testified that he communicated the information derived in this way to the deceased, and accompanied the deceased as a member of the posse to arrest the defendant. The exception to this testimony relates to the mode of proof, and not to the com-

petency of what was therein contained as evidence. Even if it was error to allow parol proof of the contents of the telegrams, such error was not prejudicial to the accused. Russell testified that he had given the information derived from the telegrams to the deceased; and the only effect the alleged objectionable testimony could have had was to disclose the source of Russell's information. It was immaterial through what medium Russell obtained his knowledge that the defendant's arrest was desired by the Fannin county officer; he did give this information to the deceased, upon the faith of which deceased acted. The source of Russell's information was not an issue, and the defendant was not hurt by the court allowing parol proof of the telegrams.

3. The deceased was shot Wednesday night, and died the following Sunday. The State offered three witnesses to prove the dying declarations of the deceased as to the cause of his death, and the person who killed him. The declarations were made by the deceased, respectively, on Wednesday night, Thursday, and Friday evening before his death. The objection was that the evidence did not disclose that the declarant was in the article of death and conscious of his condition at the time of making the declaration. It appears from the evidence of each witness that the deceased, just before making the statement, declared that his wound was mortal, and that he thought he was going to die. One of the witnesses testified that he tried to encourage him, and told him that he would probably not die, but the deceased declared that "he was done for, or would die, or something to that effect." The ball penetrated the abdomen and perforated the intestines, and physicians testified that the wound was necessarily mortal. The character of the wound, and the persistent declaration of the deceased that he knew he would die from it, made such a prima facie case as to carry such declarations to the jury. The mere fact that death did not supervene immediately would not render the testimony incompetent. In *Bryant* v. *State,* 80 *Ga.* 272 (4 S. E. 853) the dying declarations were made on Friday before the declarant's death on the following Wednesday; and the declarations were held competent. In *Jackson* v. *State,* 56 *Ga.* 235, some of the statements were made on Friday and others at an earlier period, and the deceased died on Saturday. The deceased declared when he made each statement that he felt that he would die; and this

evidence was held competent. The test is not so much the contiguity between the making of the statement and the death of the declarant, as whether they were made in articulo mortis, and when he was conscious of his condition. We think the proper foundation for the admission of the dying declarations was made, and that the court properly submitted them to the jury. The exception to the charge on this subject is manifestly without merit.

4. It was shown that the bullet which caused the death of the deceased was "metal-jacketed." A physician was asked what would have been the result of a flesh wound made with that character of bullet, and answered that it would produce infection in a wound, and an inflammatory condition would follow. Objection was made to this testimony, on the ground that it was hypothetical, not based on the facts, and was irrelevant and immaterial. The objection was not well taken, as the physician also testified that the wound was infected.

5. Exception is taken to the following charge, the criticism being that it was misleading, and calculated to impress the jury that the defendant could have testified in his own behalf, and been cross-examined had he consented thereto: "The law provides that upon the trial of a criminal case the defendant may make to the court and jury such statement as he may deem proper in his defense. He is not under oath nor subject to cross-examination without his consent, and you may give this statement just such weight as you may see proper." This was substantially the section of the code. Penal Code, §1010. It was not error to give it. *Murray* v. *State,* 85 *Ga.* 381 (11 S. E. 655).

6. Counsel requested the court to charge Penal Code, §989, as follows: "When a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies upon that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted." It was contended that this section was applicable, inasmuch as it appeared from the testimony that one Carl Foster was present and witnessed the homicide, and that his name appeared upon the indictment as a witness. It also appeared that the witness was under subpœna, and was in court. The court refused this request, and stated in the

presence of the jury that he would not give it in charge, as the witness was present, and could have been introducd by either party. The plaintiff in error insists that his request should have been given, because the prosecution, instead of introducing an eye-witness to the homicide, relied upon the dying declarations of the deceased, and other circumstances, to establish the defendant's guilt. This section appears both in the Civil Code (§5163) and in the Penal Code (§989). In a criminal case the prosecution is not called upon to produce every eye-witness to the transaction. The burden which the law places upon the prosecution is to establish the defendant's guilt of the crime charged, by competent evidence, beyond a reasonable doubt. Although the evidence tends to show that Foster was near the deceased at the time he received the mortal wound, it does not show that Foster really saw or heard what transpired at the time. Besides, the witness was in court, accessible to the accused, and could have been called by him to disprove the facts and circumstances relied on by the. State, if in point of fact he would have delivered such contradictory testimony had he been called. It is sometimes the case that the only eye-witness to a crime is unfriendly to the State, and his sympathies are enlisted in the defendant's behalf. It may be that such a witness is so devoid of character that he would not hesitate to perjure himself in order to assist the defendant to escape the consequences of his criminal act. To require the State to produce such a witness under penalty of an instruction that the failure to produce him would raise the presumption that the other testimony offered to establish the defendant's guilt is unworthy of belief, would paralyze courts of justice in the enforcement of the criminal law.

7. The court charged: "Now, gentlemen, as to whether or not the defendant killed the deceased to prevent an arrest, you may, and should, take into consideration all the testimony with reference to the charge against him in Fannin county. A certain warrant has been introduced before you, and the evidence of the sheriff of that county, and a certain card purporting to be an offer of a reward. All of these facts are before you, not for the purpose of showing that the defendant is guilty of the offense charged there, but you may consider them in so far as they may throw some light upon the question as to whether or not he knew that he was charged with that crime, whether or not he was a

fugitive from justice, and whether or not he believed and had cause to believe when Keith ordered him to hold up his hands, if he did so order, as the State contends, whether he in fact believed and had cause to believe that the deceased, Keith, was making an arrest, and whether or not he did the killing to prevent an arrest." This charge is alleged to be error, because it "takes from the consideration of the jury the defendant's theory of the case, and leaves the jury to believe that if he was charged with a crime in Fannin county that he would not be justified even though the deceased Keith fired upon him without giving him knowledge or information that he was the sheriff and authorized to arrest him, even though the jury might believe that the deceased fired upon him without imparting information as to the purpose of the deceased when he accosted him on the public highway." The defendant in his statement claimed the homicide to be justifiable; and, as we interpret this assignment of error, the criticism of the charge is that it excluded his defense of justification because he was charged with a crime in Fannin county. We do not think the charge is open to this objection.

Exception is also taken to the following excerpt from the charge: "As I have said, if you find that he shot and killed Keith to prevent an arrest, as the State contends, he would be guilty of the offense of murder, whether he knew Keith was an officer or not." This excerpt was taken from the court's instruction as to the grade of a homicide when committed by an escaped felon to prevent an arrest. The exception to the quoted extract was that it was misleading, and caused the jury to ignore the defendant's theory of the case. The assignment of error does not disclose the defendant's theory, and we must look to his statement to discover it. There we find it to be justifiable homicide. A sheriff may arrest an escaped felon, on probable ground of suspicion, without a warrant. *Jackson* v. *State,* 30 *Ga.* 426. And so may a private person. Penal Code, §900. "To slay an officer to avoid being taken in custody, knowing that his object is to make an arrest for felony committed several months previously, is murder; but done suddenly, without knowledge of his purpose or official character, and without malice, it is manslaughter. Belief, or reasonable grounds of belief, would be equivalent to knowledge." *Croom* v. *State,* 85 *Ga.* 718 (11 S. E. 1035, 21 Am. St. R. 179). There

was evidence from which the jury could infer that the defendant was an escaped felon, and killed the deceased to prevent an arrest. The homicide under these circumstances would be murder, whether the officer had a warrant or whether the defendant knew he was an officer. *Snelling* v. *State, 87 Ga.* 50 (13 S. E. 154).

After a careful consideration of the entire record, we find nothing which requires the grant of a new trial; and the judgment is *Affirmed. All the Justices concur.*