STATE, Respondent, v. SITTS, Appellant.

(26 N. W.2d 187)

(File No. 8875. Opinion filed February 24, 1947.)

**John T. Heffron**, of Deadwood, for Appellant.

**George T. Mickelson**, Atty. Gen., **E. D. Barron**, Asst. Atty. Gen., and **Clinton G. Richards**, State's Atty., of Deadwood, for Respondent.

SICKEL, P.J. The state's attorney of Lawrence county filed an information in the circuit court charging George Sitts with the murder of Tom Matthews, a state police officer. Defendant pleaded not guilty. The jury found the defendant guilty as charged in the information and recommended that he be sentenced to death and the court imposed the sentence recommended by the jury. Motions to set aside the verdict and to declare a mistrial and application for a new trial were denied, and defendant has appealed.

In the process of selecting a jury the regular panel was exhausted and several venires were issued. Some of the venires were challenged by the defendant on the ground that Robert Thomas who summoned the panels was at the time a deputy sheriff of Lawrence county; that Sheriff J. O.

Twiford, who appointed Robert Thomas as deputy sheriff, had theretofore been disqualified, and the disqualification of the sheriff equally disqualified the deputy sheriff.

The first question is whether Sheriff Twiford had been disqualified. Section 34.3612 of the code provides that:

"When the panel is formed from persons whose names are not drawn as jurors, a challenge may be taken to the panel on account of any bias of the officer who summoned them, which would be good ground of challenge to a juror. * * *"

The issue of bias of the sheriff presented by this challenge and the objections thereto was tried by the court. Evidence of implied bias as defined by SDC 34.3618 was not established. The sole question was whether the evidence was sufficient to show actual bias as defined by SDC 34.3617 (2). That statute defines actual bias as follows:

"Existence of a state of mind on the part of the juror, in reference to the case or to either party, which satisfies the Court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging, * * *."

 Twiford, the sheriff, testified that he had summoned thirty jurors pursuant to a special venire; that he had taken charge of the investigation of the case from and after January 27, 1946; that he had directed the search for defendant in Lawrence county; that he secured information as to the whereabouts of defendant and acted upon it, and was in actual communication with officers throughout the county, including the state police; that he used a special apparatus for communicating with law enforcement agents; that he was advised by Ronneberg of the circumstances under which Ronneberg was compelled to aid the defendant in his attempt to escape; that he took Ronneberg's written statement covering that event. From this evidence it appears that the sheriff performed his official duty in apprehending the accused, and in securing and preserving evidence against him. The sheriff testified as a witness for the State, identifying articles delivered to him including a wal-

let with $90, a holster, part of a holster, cartridge clip, revolver, road maps and some other articles, all of which were admitted in evidence at the trial without objection. None of the evidence submitted on the trial of this challenge shows that the sheriff ever formed or expressed an opinion as to the guilt of accused, or that he communicated any information to, or tried to influence any juror summoned by him, or that any juror summoned by him was not as intelligent, reliable and impartial as would have been summoned by any other method or by any other person. The facts submitted were wholly insufficient to establish the bias of the sheriff. State v. Hayes, 23 S. D. 596, 122 N. W. 652. Nevertheless, the attorney general withdrew his objections to the challenge and the court discharged the panel summoned by Sheriff Twiford, expressly stating that the propriety of the challenge was not decided. Such withdrawal of objections to the challenge terminated the inquiry as to the bias of the sheriff, but it was not an admission of the sufficiency of the evidence to prove such bias, not an admission that the sheriff was actually biased. Neither was the dismissal of the panel summoned by Sheriff Twiford a judicial decision on the merits of challenge.

▪ It is also contended that when the court discontinued the issuance of venires to the sheriff it became the duty of the coroner to summon the jurors and that subsequent venires should have been directed to him according to the provisions of SDC 12.1101. The court did propose that subsequent venires be directed to the coroner, and to such proposals counsel for the defendant stated:

"I would have to also challenge the coroner because he took part in the coroner's inquest and heard the testimony and the verdict that was returned and he wouldn't have the qualification of a juror under the statute. I think the duty would resolve upon the court to appoint a Court Elisor."

No objection to this challenge was made. Without expressly ruling on the challenge, the court abandoned the plan of ordering that the jurors be summoned by the coroner. After challenging the qualification of the coroner, the

defendant is in no position now to claim that the coroner was qualified to summon jurors, and that the court erred in not directing subsequent venires to him.

■ After these proceedings were had the court announced his intention to appoint "a special officer to impanel another special venire," and ordered that Robert D. Thomas, a deputy sheriff of Lawrence county, should summon thirty additional jurors from the body of the county. The jurors were summoned by Thomas. They appeared, were examined and were accepted or challenged by the State and the defendant without objection to the panel. Later three additional and similar venires were issued and directed to Thomas. Defendant challenged each of the panels summoned pursuant to these three venires on the ground that Thomas "is a deputy sheriff and under the disqualifications of the sheriff he must as a matter of law be disqualified." As heretofore stated, it was neither proved nor decided that the sheriff, Twiford, was disqualified to summon jurors, and therefore the challenges to the panels summoned by Thomas were properly denied.

Another assignment of error relates to peremptory challenges. The State waived its sixteenth, seventeenth and eighteenth opportunities to exercise peremptory challenges. The defendant waived none. After defendant had exercised his twentieth challenge the court announced "State's eighteenth." The State exercised another challenge, to which defendant excepted and the exception was denied. It is appellant's contention that "each time the state waived a peremptory challenge it lost that challenge, and to allow the state to later take advantage of the challenge that was waived was prejudicial error." The question is whether the State lost one of its peremptory challenges each time it passed or waived. If so, the State was allowed more peremptory challenges than were permitted by statute.

■ Each party was entitled to twenty peremptory challenges in this case. SDC 34.3616. The order of exercising peremptory challenges is regulated by SDC 34.3622 which provides:

"* * * If all challenges on both sides are disallowed, either party, first the state and then the defendant, may take a peremptory challenge, unless the party's peremptory challenges are exhausted."

The language of this statute requires that peremptory challenges shall be exercised alternately commencing with the State and terminating with the defendant. Under such statute "the waiver of a challenge exhausts that challenge the same as though it had been used." State v. Jones, 27 Wyo. 46, 191 P. 1075, 1076; State v. Peel, 23 Mont. 358, 59 P. 169, 75 Am. St. Rep. 529; Hurt v. Monumental Mercury Mining Co., 35 Idaho 295, 206 P. 184; O'Malley v. O'Malley, 46 Mont. 549, 129 P. 501, Ann. Cas. 1914B, 662; Gilchrist v. Brande,` 58 Wis. 184, 15 N. W. 817; People v. Rambaud, 78 Cal. App. 685, 248 P. 954.

■■■ Lack of information or new conditions may call for an exception to or relaxation of the statutory rule, McDonald v. State, 172 Ind. 393, 88 N. E. 673, 139 Am. St. Rep. 383, 19 Ann. Cas. 763; State v. Crea, 10 Idaho 88, 76 P. 1013, and in such cases the court may in the exercise of a sound discretion, permit the exercise of a peremptory challenge out of the regular order, provided, the party has not exhausted his peremptory challenges, and the jury has not been sworn to try the case. State v. Rathjin, 46 S. D. 412, 193 N. W. 247; State v. Burmeister, 65 S. D. 600, 277 N. W. 30. Here the State had exhausted its twenty peremptory challenges before defendant exercised his twentieth challenge, and, therefore, the exercise of another challenge by the State was not permissible.

■■ Appellant was entitled to a fair trial by an impartial jury, as he says, but "Formal errors or irregularities in impaneling the jurors, even in a capital case, are harmless, unless it affirmatively appears on the record that accused was injured thereby." 24 C. J. S., Criminal Law, § 1900a; People v. Rambaud, 78 Cal. App. 685, 248 P. 954 (hearing denied by S. Ct.); People v. Pilbro, 85 Cal. App. 789, 260 P. 303; Pointer v. United States, 151 U. S. 396, 14 S. Ct. 410, 38 L. Ed. 208; Kloss v. United States, 8th Cir.,

77 F.2d 462; State v. La Croix, 8 S. D. 369, 66 N. W. 944; State v. Johnson, 24 S. D. 590, 124 N. W. 847.

In People v. Rambaud, supra, the State declined to exercise some of its peremptory challenges in turn as required by a California statute similar to SDC 34.3622. After the defendant had exhausted all of his peremptory challenges the court permitted the State to exercise two more peremptory challenges, and defendant · claimed that this constituted prejudicial error requiring a reversal of the case. The opinion of the court applies Section 1404 of the California Penal Code, which is the same as SDC 34.2902, and which reads as follows:

"Neither a departure from the form or mode prescribed in this title in respect to any pleading or proceeding nor an error or mistake therein renders it invalid, unless it has actually prejudiced the defendant or tended to his prejudice, in respect to a substantial right."

In reaching the conclusion that the record did not show prejudicial error the California court said [78 Cal. App. 685, 248 P. 956]:

"Under such circumstances, the defendant is simply in a position where he has a right to complain if any objectionable juror has in this manner been placed upon the panel, and it is incumbent upon the defendant to show that such is the case. The mere fact that some other juror is placed upon the panel by reason of the exercise of a challenge out of order by the prosecution is not, in and of itself, a showing of prejudicial error. For all that appears in this case, the juror placed upon the panel was just as acceptable to the defendant and as free from bias or prejudice as was any juryman so displaced."

The case of Pointer v. United States, supra [151 U. S. 396, 14 S. Ct. 416], was one in which the defendant was entitled to twenty peremptory challenges. All of his challenges were exercised, but he complained of the order in which he was required to exercise them. Speaking for the court Justice Harlan said that the right of the defendant to peremptory challenges "* * * is not of itself a right to select, but a

right to reject jurors. * * * He was only entitled of right to strike the names of 20 from the list of impartial jurymen furnished him by the court. If upon that list appeared the name of one who was subject to legal objection, the facts in respect to that juror should have been presented in such form that they could be passed upon by this court. But it does not appear that any objection of that character was made, or could have been made, to any of the 37 jurors found, upon examination, to be qualified.

"Thus, in our opinion, the essential right of challenge to which the defendant was entitled was fully recognized; and there is no reason to suppose that he was not tried by an impartial jury."

In the case of State v. La Croix, supra [8 S. D. 369, 66 N. W. 945], nine of the jurors had been examined for cause, passed by both sides and sworn to try the case, when the court adjourned for the day. One of the jurors so chosen failed to appear the next morning, whereupon the court discharged him and ordered the selection of another juror in his stead. It was contended by defendant that the discharge of the juror by the court after he was sworn was error for which the judgment of conviction must be reversed. In deciding that case this court said:

"While litigants, within the statutory restrictions, have power to reject, it is not their province to select jurors; and, ordinarily, when a prisoner has been tried by one impartial jury, he should not be allowed another trial to another impartial jury, simply because the court excused a qualified juror and selected in his stead another, possessing the same qualifications, and against whom no objection is urged."

In this case the State was permitted to exercise another peremptory challenge after the twenty challenges allowed to the defendant had been exhausted. This was a departure from the statutory procedure. The juror who took the place of the juror discharged on the exercise of the State's last challenge was examined by the defendant and passed for cause, and there is nothing in the record to show that such juror was objectionable to the defendant. By this procedure

the qualified juror who was discharged was replaced by another juror possessing the same qualifications, and, therefore, the error was harmless.

Appellant also contends that the evidence is insufficient to prove the crime of murder. He says:

"Just what occurred on the highway at the time the defendant was met by officer Matthews is not shown by the record * * * Does not the record fall short of showing a killing with malice aforethought and premeditated design to effect death, beyond a reasonable doubt?"

The general rule is that: "* * * When persons have authority to arrest or imprison, and, using the proper means for that purpose, are resisted in so doing and killed, it will be murder in all who take part in such resistance." Raferty v. People, 69 Ill. 111, 18 Am. Rep. 601; People v. Watkins, 309 Ill. 318, 141 N. E. 204; People v. Pool, 27 Cal. 572; State v. Mowry, 37 Kans. 369, 15 P. 282; People v. Brengard, 265 N. Y. 100, 191 N. E. 850, 93 A. L. R. 1465; Harper v. State, 129 Ga. 770, 59 S. E. 792; State v. Spaulding, 34 Minn. 361, 25 N. W. 793; Cornett v. Commonwealth, 198 Ky. 236, 248 S. W. 540; 40 C. J. S., Homicide, § 19.

To warrant a conviction on a charge of murder the evidence must be sufficient to show the legality of the deceased officer's authority, the legality of the manner in which he exercised such authority, and that accused had knowledge of such authority at the time.

The defendant had been convicted of a homicide in Minnesota, and had been sentenced to serve a term of imprisonment in the state penitentiary there. He was being held in the county jail at Minneapolis pending transfer to the state penitentiary when he made his escape. He was in flight to avoid being apprehended and brought to justice. He was therefore aware of the cause for which he was being pursued. On the evening of January 24, 1946, defendant stopped at a filling station in Belle Fourche. Sigman, the station operator, suspected his identity and telephoned what information he had to county sheriff Malcolm. Defendant left.

the filling station going south on highway 85, and continued to the place where the highway forms a junction with United States Highway 14. Defendant then turned west on United States Highway 14 and drove for the distance of about a mile when he was overtaken by Matthews near the Williams' place. Matthews sounded his siren and defendant stopped. Then Matthews drove along side, got out of his car, and spoke to defendant directing him to drive a short distance to the next corner and turn around. Defendant admitted that he knew from the siren and the directions given that Matthews was a police officer. Defendant did as Matthews directed and drove west on United States Highway 14, turned around and proceeded east on United States Highway 14, followed by Matthews. As they reached the intersection Matthews stopped defendant again with his siren. Malcolm was there waiting for them. At that time an oil truck driven by Cook came south on United States Highway 85 and turned west to enter United States Highway 14. Matthews moved his car forward to let Cook pass. As Cook passed he saw no one outside the cars. He drove his truck forward about seventy-five yards and then slowed up for a stop sign. At that time he heard a gunshot. He stopped his truck, got out, looked back and saw gunfire, directed downward and about two feet above the body of a man lying face down on the highway. The evidence shows without contradiction that the defendant fired the shot seen and heard by Cook, and that Matthews was the victim. Malcolm lay dead from gunshot wounds a few feet away. The cars of Matthews, defendant and Malcolm then stood on the south side of the road facing east, Matthew's in front, Malcolm's in the rear and the defendant's car between them. Defendant says that he backed out of his car on the driver's side, facing his own car, with his gun in his hand; that he wanted to try to make his getaway and decided he had nothing to lose. He says that he looked to the right and then to the left; that the man on his right (Malcolm) was closest and armed, so he shot Malcolm first; then he turned to the left and shot Matthews as he was getting out of his car. He

walked over toward Matthews and as he got near he saw Matthew's arm move and thought Matthews was getting his gun so he shot him again. This last shot was the one seen and heard by Cook. Then defendant took Matthew's billfold and gun, and also took Malcolm's billfold, and drove away. Doctor Hare, who examined Matthews' body, testified that two shots entered Matthews' back; that it was his belief that both bullets went through the heart, and that either one would have been fatal. There is no evidence that any shots were fired by either Matthews or Malcolm. This evidence shows that the defendant was a convicted felon in flight, and that, therefore, cause for his arrest existed. Matthews was a state police officer and Malcolm was a county sheriff, and when these officers accosted the defendant both were acting within their jurisdiction and were engaged in the discharge of their official duties. The defendant had knowledge of their official character and authority at the time and also knew that the object of the officers was to arrest him. The police cars were so located as to impede or prevent the defendant's escape in his car, but the evidence shows nothing in language or action to indicate a design on the part of the officers to do violence to the defendant in case he should submit to peaceable arrest. Defendant slew both officers without the slightest provocation, for the sole purpose of preventing arrest. The evidence is therefore sufficient to justify the jury in finding that the homicide was committed by defendant with a premeditated design to effect the death of Matthews.

Judgment affirmed.

WOHLHETER, Circuit Judge, sitting for POLLEY, J.