## HARPER *v.* THE STATE.

1. Where the only eye-witness to a homicide testifies before the grand jury while such jury, under an indictment against the slayer, is making an investigation of the facts connected with the homicide, which indictment is afterwards returned as true, the provisions of the constitution of the United States, amendment article 6, providing that the accused shall be confronted with the witnesses against him, are not violated because the defendant is not present when the witness is de-

livering such testimony before the grand jury, or because the State does not have such witness testify before the jury trying such defendant under the indictment.

2. It is not ground for a new trial that the State did not introduce, upon the trial of one indicted for murder, the only eye-witness to the homicide; and this is true although at the beginning of such trial the solicitor-general stated to the jury "that he would by an eye-witness produce sufficient facts to hang forty men," and though the defendant knew that a certain witness subpœnaed for the State was the only eye-witness to the homicide, and expected the State to introduce him as a witness upon the trial.

3. Upon the hearing of a motion for a new trial the following facts appeared: The only eye-witness to the homicide was subpœnaed by the State and by the defendant, and was present at the trial of the defendant for murder. This witness testified before the grand jury which found the indictment under which the defendant was tried, and the solicitor-general, at the beginning of the trial, stated he would produce testimony of an eye-witness to the homicide sufficient to hang forty men; but such witness was not introduced upon the trial. Defendant knew at the trial that he was the only eye-witness to the homicide. The witness told defendant's counsel he was a witness for the State, and refused to make before the trial any statement to such counsel concerning the facts connected with the homicide; but after the trial he informed defendant's counsel of facts he knew which were material to the defense. *Held,* that the judgment of the court below, in refusing a new trial on the ground of newly discovered evidence, will not be disturbed.

4. No error was committed by the court upon the hearing of the motion, requiring a reversal of the judgment of the court below.

Argued October 19, 1908.—Decided January 13, 1909.

Indictment for murder. Before Judge Fite. Murray superior court. August 14, 1908.

*Griffin & Altaway, Samuel D. Hewlett,* and *W. W. Sampler,* for plaintiff in error. *John C. Hart, attorney-general,* and *Samuel P. Maddox, solicitor-general,* contra.

HOLDEN, J. The defendant was convicted of murder, without recommendation; and the judgment of the court overruling his motion for a new trial was affirmed by this court. *Harper* v. *State,* 129 *Ga.* 770 (59 S. E. 792). He made an extraordinary motion for a new trial, and to the judgment of the court overruling the same he filed exceptions, bringing the case here for review. For a full report of the facts of the case, see the decision above referred to. The defendant was under indictment for murder in Fannin superior court; and while in Murray county, and while Ben Keith, the sheriff of that county, was undertaking to arrest

the defendant, the sheriff was shot and killed by the defendant. It appears that the only eye-witness to the killing was Carl Foster. One of the contentions of the State was that the defendant was an escaped felon, and killed the deceased to prevent him from arresting him. The question now before this court is whether the court below committed error upon the hearing of the extraordinary motion for a new trial and in overruling the same.

1. One of the grounds of this motion is as follows: "Because movant was not confronted by one of the witnesses against him, to wit, Carl Foster, who testified before the grand jury and upon whose testimony movant was indicted; the said witness being the only eye-witness to the killing. The failure to confront movant with the said witness denied him the right conferred upon him by the constitution of the United States, amendment article 6, said right being that of being confronted with a witness against him." The meaning of the provision of the constitution referred to, providing that the accused shall be "confronted with the witnesses against him," is that the testimony of no witness shall be used against a defendant upon his trial unless the defendant is confronted with such witness while he is delivering such testimony. It does not mean that the defendant is entitled to be confronted with the witness when he is delivering testimony before the grand jury, which must find an indictment before the defendant can be put upon trial. The defendant was not upon trial before the grand jury. Nor does this provision of the constitution mean that any witness who testifies before the grand jury, and upon whose testimony an indictment is found, must be introduced as a witness upon the trial of the defendant for the offense for which he is indicted. The meaning of this provision of the constitution is that the testimony of no witness against a defendant shall be used upon his trial, in the shape of an affidavit, or answers to interrogatories, or in any other way, where the defendant is not confronted by the witness while such testimony is being delivered by him. This provision necessarily requires that the witness and the defendant both be personally present when the testimony of the witness is being delivered against him; but there is no requirement that every witness who delivers testimony before the grand jury which finds an indictment against a party shall be introduced upon the trial of such party for the offense for which he is indicted.

2. Another ground of the motion was that the defendant was denied a fair and impartial trial, because the solicitor-general failed and refused to introduce before the jury, upon the trial of the case, Carl Foster, the only eye-witness to the killing. We fail to see wherein the defendant was denied a fair and impartial trial simply because the State did not introduce the testimony of the only eye-witness to the killing. Such witness might be untruthful and corrupt. He might be willing to testify to anything which would acquit the defendant. It would be an unfair trial for the State if the burden were upon it in all instances to introduce, as a witness upon the trial, the only eye-witness to the homicide. If the testimony such witness would give would be favorable to the State, the defendant can not be harmed by its absence, which would make it more difficult for the State to secure a conviction. On the other hand, if the witness would testify in aid of the defendant, the State was under no duty to produce testimony unfavorable to it, and the defendant had the right and should have availed himself of the privilege of introducing and having the witness testify.

Another ground of the motion for a new trial is that the defendant was misled by a statement made by the solicitor-general in his opening argument, "that he would by an eye-witness produce sufficient facts to hang forty men," and because the eye-witness was not introduced and allowed to testify. The defendant alleges that he knew that Carl Foster was the only eye-witness, and believed that he would be introduced by the State, and was afraid to place said witness up for the defense. He believed he would be introduced as a witness by the State in rebuttal. This is certainly no ground for a new trial. After the State closed its testimony without introducing Carl Foster, the defendant himself then had an opportunity to offer such witness.

3. Another ground of the motion was alleged newly discovered evidence contained in the affidavit of Carl Foster. Defendant in his motion made substantially the following allegations: He did not know nor did his counsel know of this testimony at the trial, nor could they secure the same thereat. His attorney, Charles H. Griffin, prior to the trial requested Foster to give a statement in regard to the killing. Foster refused to do so, stating that he had been advised that it was best to keep his mouth

shut. Foster stated he was a witness for the State and would testify against movant. The State closed its testimony without introducing Foster. Movant believed he would be introduced in rebuttal. He was afraid to introduce the witness, knowing that he was a State's witness, and on account of the solicitor-general's remark in his opening statement to the jury that he would introduce an eye-witness who would testify to facts sufficient to hang forty men, and because Foster had told defendant's attorney that he would testify for the State, and because defendant knew the witness had been introduced before the grand jury which found the indictment. Sometime after the trial defendant's attorney, Griffin, located Foster, and finally got him to give him the statement contained in Foster's affidavit of the occurrence as he knew it and as he had presented it to the solicitor-general prior to the trial. If Foster had been allowed to testify and had not been intimidated, defendant would not have been convicted. The defendant was convicted on the idea that he knew Ben Keith was sheriff and wanted to arrest him for a felony, when, as a matter of fact, he did not know these facts, as shown by the affidavit of Foster. If movant had known of this testimony, he would have used Foster as a witness upon the trial. He was convicted on the testimony of Amos Keith as to the dying declarations of the deceased that the defendant knew he was the sheriff, which the affidavit of Foster shows not to be true, and which shows that Amos Keith attempted to get Foster to perjure himself, and, after the witness refused to do so, intimidated him and would not allow the witness to make a statement to movant, or to his attorneys. The witness was afraid of Amos Keith and was frightened and intimidated. He was in fear of his life, and would not give a statement to movant, or to his attorneys. All the facts alleged in reference to the testimony of Foster came to the knowledge of movant since the trial. If the witness had been introduced by the State, or if he had been allowed to give movant a statement of what he would testify, and if he had been allowed to testify unrestrained and unintimidated, movant would not have been convicted. Neither the movant nor his attorneys knew of such testimony, or that the witness had been intimidated, before the trial, nor could they have discovered these facts by the exercise of ordinary diligence.

To the motion for a new trial was attached the affidavit of the

defendant, wherein he stated that all of the allegations contained in the motion, so far as they came within his knowledge, were true, and, so far as derived from the knowledge of others, he believed them to be true. There were also attached to the motion affidavits of his counsel, stating that they did not know of the facts to which Foster would testify, prior to the trial, nor could they have ascertained the same by the exercise of ordinary diligence. Carl Foster, in his affidavit, among other statements made substantially the following: On the night of the killing he and the sheriff, Ben Keith, were on the side of the public road, behind a large stump, waiting for the defendant. When the defendant reached them, they raised up, Keith with a pistol in his hand and Foster with a shotgun, whereupon Keith said to Harper, "Throw 'em up," meaning for Harper to throw up his hands. Harper backed off, saying, "I am no negro," and turned and ran in the direction from which he came. The deceased pursued him and shot several times. After they had run about 200 yards, Harper turned and shot, and killed the sheriff. Keith fired the first shot, and did not tell Harper that he was the sheriff, nor did he tell him who he was, nor did he say that he wanted to arrest him. If the sheriff had made any such statements, the witness would have heard him. The only thing the sheriff said to Harper was, "throw 'em up." Foster was the only eye-witness to the killing, and was sworn as a witness for the State by the solicitor-general and excluded with the other witnesses during the trial. Mr. Griffin, attorney for the defendant, approached the witness and asked him what he would swear; and Foster makes in his affidavit the following statements: "He simply told Mr. Griffin, and everybody else interested in Harper, that he was a witness for the State and was advised to keep his mouth shut. Affiant further declined to go into the facts with Harper for any reason. He told Mr. Griffin he would not discuss the case with him, because he had been advised not to talk with him, or with any one else interested in Harper's case. Affiant says that neither Mr. Griffin nor any one else interested in Harper's case knew what he would swear, for the reason that he declined to talk to him, nor any one else interested in Harper's behalf." There were also attached to the motion several affidavits of persons knowing Foster, as to his good character, associates, etc.

In the decision of this case, 129 *Ga.* 770, it was held: "An officer may arrest an escaped felon without a warrant; and if such escaped felon slay the officer, without notice of his official character, solely to prevent an arrest, the crime is murder." And on pp. 776, 777, it was said: "There was evidence from which the jury could infer that the defendant was an escaped felon, and killed the deceased to prevent an arrest. The homicide under these circumstances would be murder, whether the officer had a warrant, or whether the defendant knew he was an officer." It appears from the motion for a new trial, and the evidence submitted in support thereof, that the defendant knew the witness was the only eyewitness to the homicide, and that he was subpœnaed as a witness for the defendant as well as by the State, and was present at the trial of the case. The defendant knew that the witness had knowledge of material facts connected with the killing, and the presence of the witness at the trial of the case gave him an opportunity to put him on the stand and have him testify what he did know. The presumption is that all witnesses will tell the truth, and the defendant must have known that the sheriff did the first shooting and did not apprise him of the fact that he wanted to arrest him, or that he was the sheriff. If these things were true, the defendant knowing them to be true, and knowing that Foster was the only eye-witness who could testify whether or not they were true, and Foster being present at the trial of the case, are the reasons given why Foster was not put upon the stand sufficient to grant a new trial on extraordinary grounds? In the case of *Phillips* v. *State*, 33 *Ga.* 281, the defendant applied to the witness to learn what the witness would testify, and the witness told him he knew nothing; but after the trial and conviction the accused learned the facts to which the witness would testify, which were material and would likely have produced a different verdict. On page 288 the court says: "The witness told him that he knew nothing, thus accidentally or by design misleading the accused, who was not bound in consequence to subpœna or compel his attendance as a witness." In that case it was ruled that a new trial ought to have been granted on the ground of newly discovered evidence. In the case of *Thomas* v. *State*, 52 *Ga.* 509, the attorney for the defendant, on inquiry of persons present at the difficulty in which the defendant was accused of committing a crime, "was misled by their

telling him they did not know what part defendant took in the fuss;" and it was held, "that when after the trial it was discovered that these witnesses do know and are ready to swear that the defendant did not do the principal act for which he was convicted, and that another did, it is no reply to a motion for a new trial that sufficient diligence had not been shown." On page 515 the court says: "When counsel, assigned by the court, undertook to inquire into the facts, he was unable to get at the truth, the witnesses refusing to tell what they knew, and misleading him by saying they knew nothing. They did wrong; but was the prisoner to blame for that? Could he know that, if put on the stand, they would testify as they say? He might well think that they did not see the blow struck." In each of these cases it appears that the defendant, or his counsel, were *misled* by the witness. Can it be said in the present case that the defendant or his counsel was misled by the conduct and statements of Foster, or any other facts or circumstances shown, and can we say that the court abused his discretion in holding that the defendant and his counsel were not misled? The affidavit of Harper to his motion for a new trial is that the allegations in the motion, so far as they come within his knowledge, are true, and so far as derived from the knowledge of others, he believes them to be true. The affidavits of his counsel state that they did not know of the evidence of Foster, or what he would testify to, until after the trial of the case, and could not have discovered the same by the exercise of ordinary diligence prior thereto; though there is no positive statement in these affidavits that they were misled into the belief that Foster would not testify to facts already within the knowledge of the defendant. Nor does he say in his affidavit, nor do counsel say in their affidavits, that Foster made any statement to them as to what he would testify, or that he would testify against the defendant. It is stated in the motion that Foster said he would testify against the defendant, to which motion was attached the affidavit of the defendant in the language above stated. It does not appear from any affidavit submitted in support of the motion what, if anything, Foster ever said to Harper. Foster does state in his affidavit that he declined to go into the facts with Harper for any reason. The motion, the affidavit thereto, and the affidavits submitted in support of the motion would not ad-

mit of the construction that Foster ever told any one that "he would testify against the defendant." Foster did state that he told defendant's counsel that he was a witness for the State. But after testifying before the grand jury, counsel for the State did not put Foster on the stand as a witness. The State finally closed its case without putting Foster on the stand as a witness; he was present at the trial, and could have been introduced by the defendant as a witness; there was nothing to show that he would not tell the truth about what occurred at the killing; every witness is presumed to tell the truth; the defendant knew Foster was present at the killing and must have had knowledge of some of the facts that actually occurred. These facts put the defendant in the position of not being able to complain of the fact that he did not get the benefit of Foster's testimony upon the trial. It is frequently the case that a witness is subpœnaed by both sides, and it is sometimes doubtful when his testimony is known whether it will benefit one side or the other. Foster was subpœnaed in this case by the defendant as well as the State, but was sequestered with the State's witnesses upon the trial. If the State, which had subpœnaed Foster, expected to use him as a witness, it was but in the usual order of trial for the State to sequester him with the other witnesses, at the beginning of the trial, it being necessary, upon the trial, for the State to first introduce testimony. The solicitor-general, in his opening remarks, made a statement which indicated that he expected to use Foster as a witness. This statement, and the fact that Foster was sequestered with the State's witnesses, and the fact that Foster told the defendant's counsel that he was a witness for the State, but did not mislead him by stating what he would testify, or that he knew of nothing that would benefit the defendant, were not sufficient, together with the other facts and circumstances, to require the judge to find that the defendant or his counsel was misled into the belief that Foster would testify to facts unfavorable to the defendant. In view of all the facts the court had the right, at any stage of this trial before a verdict was rendered, to reopen it and permit the defendant, at his request, to introduce Carl Foster as a witness. But no application was made by the defendant to have the case reopened and Foster introduced as a witness after it became known to him that the State did not intend to use his testimony.

If the defendant had offered Foster as a witness, the presumption is that he would have told the truth, which was known to the defendant, and there is nothing in the record to require a finding by the court below that the defendant and his counsel were justified in the belief that Foster would not have told the truth if placed upon the stand. In this connection, see *O'Neil* v. *State,* 104 *Ga.* 538 (30 S. E. 843), where it was held: "Where one indicted for crime knows at the time of his trial that certain persons have knowledge of facts material to the case, but declines to introduce them as witnesses because of a fear that they will not testify truly, he can not afterwards avail himself of their testimony as newly discovered evidence." Also, in this connection, see *Sellers* v. *State,* 99 *Ga.* 212 (25 S. E. 178, 59 Am. St. R. 253) ; *Hall* v. *State,* 117 *Ga.* 263 (43 S. E. 718) ; *Burgess* v. *State,* 93 *Ga.* 304 (20 S. E. 331) ; *Kinnebrew* v. *State,* 81 *Ga.* 765 (7 S. E. 691) ; *Hudgins* v. *State,* 61 *Ga.* 182.

4. Another ground of the extraordinary motion for a new trial is that the defendant was denied a fair and impartial jury, in violation of the provisions of the constitution of the United States, before referred to, because one of the jurors was prejudiced and biased against movant and was pledged to find a verdict against him, and disregarded the evidence in the case and voted to convict movant. This ground of the motion was supported by the affidavit of one witness, who swore that the juror referred to stated, before the trial of the case, "that if he was on the jury which tried the case, that he would hang Harper or stay in the jury room until the bugs carried him off." In rebuttal of this statement the State offered upon the hearing of the motion the affidavit of the juror attacked, wherein he denied making such statement. In view of this affidavit of the juror, under the repeated rulings of this court, it will not interfere with the discretion of the court below in overruling this ground of the motion.

There is no merit in the objection made to the admissibility of the affidavit of the juror in evidence upon the hearing, nor in the objections to the statements in the affidavit not directly in rebuttal of the charges made in the affidavit of the witness attacking the juror. The statements in the affidavit of the juror as to the distance he lived from the county site, that he was influenced by no improper motives, that he was free from prejudice and bias and

other improper influences, and was under no obligations to any of the Keith family, and similar statements, were not improper matters to be placed in the affidavit, in view of the charge made against him.

Another ground of the motion is that the defendant was denied a fair and impartial trial, because certain members of the jury were forced to bring in a verdict against movant which was not their verdict, because it was brought about by the jurors being locked in a room for about eighteen hours, and the verdict was not an expression of their opinion as jurors in the case; that the jurors only consented to the verdict rendered, in the belief that the defendant would secure a new trial, and on account of the further fact that they were so weary that they could not find a true and impartial verdict. The only evidence in support of this ground was the affidavit of two jurors to the same effect as the allegations made in the motion. The State demurred to this ground of the motion, on the ground that it was an effort on the part of the jurors to impeach their verdict, and that such effort was against the law and against public policy. The plaintiff assigns as error the judgment of the court sustaining this demurrer and striking this ground of the motion, after the motion and the affidavits above referred to were read. As the only evidence in support of this ground of the motion was the affidavits of the jurors themselves, who could not impeach their verdict as they attempted to do, there was no merit in this ground; and in sustaining the demurrer the court committed no error requiring a reversal of his judgment overruling the motion.

Another ground of the motion was that the defendant was denied a fair and impartial trial, because the only eye-witness, Carl Foster, was placed in fear by Amos Keith, and was afraid to testify, or to allow movant to become acquainted with his testimony, and that Amos Keith threatened and intimidated this witness. The evidence in support of this ground of the motion is not sufficient to sustain it. The defendant offered, in support of this ground of the motion, the affidavit of Carl Foster, stating that Amos Keith undertook to persuade him to say that the deceased told Harper that he was the sheriff. He further stated that Amos Keith told him that if he were Foster, he would tell the grand jury that the deceased did tell Harper that he was the sheriff;

that if he would only say this, it would hang Harper, and that he believed the deceased did make such statement. Foster, in his affidavit, states that he told Amos Keith that the deceased did not tell Harper he was the sheriff, and that he (Foster) would not swear that he did. He further states in his affidavit that he testified before the grand jury and related the facts connected with the killing just as he stated them to be in his affidavit. It would seem from the facts stated by the witness in his affidavit that his conversation with Amos Keith occurred before the witness testified before the grand jury. We fail to see anything in the affidavit of Carl Foster, or in any of the other evidence offered upon the hearing of the motion, that proves this ground of the motion for a new trial to be true. Amos Keith in his affidavit denies having undertaken to intimidate or threaten the witness; but in the absence of his affidavit this ground of the motion could not be sustained, because of no evidence to support it.

Defendant assigns error on the admission of the affidavit of Amos Keith, who, in his affidavit offered by the State, denied making to Carl Foster the statements sworn to by Foster as having been made to him by Keith. This affidavit was unquestionably admissible to refute the statements made in the affidavit of Foster. Another assignment of error in the bill of exceptions is that the court committed error in overruling the motion of the defendant "to exclude all the testimony in said affidavit except that portion which refuted the charges made in the affidavit of Carl Foster." This is not a good assignment of error, because it does not specify the portions of the affidavit objected to. However, the statements made in the affidavit of Amos Keith, not in direct refutation of the charges made in the affidavit of Foster, were not of such harmful effect to the defendant as would require a reversal, even if not admissible. Such statements as the age of the witness, where he resided, that on account of the great distress caused him by the death of his son he took no interest in finding out what any one would swear in the case, that he did not talk with any witnesses connected with the case except at the times and places specified, and then had but little, if anything, to say in regard to the case, if not admissible, were not of such harmful effect to the defendant, in the consideration of the motion, as to require a reversal.

Error is also assigned in the bill of exceptions on the failure of the court to repel and rule out certain affidavits offered by the State which related to the character and veracity of Amos Keith. There were no material statements in the affidavit of Amos Keith except those repelling the charges made in the motion for a new trial that he intimidated and threatened the witness Carl Foster. These charges were not sustained by any proof offered by the defendant, and the affidavit of Amos Keith becomes immaterial. Therefore, even if there were some inadmissible statements in the affidavits objected to, which were offered for the purpose of sustaining the character of Amos Keith, the admission of such affidavits was harmless and would not be such error as would require a new trial.

The defendant assigns error on the overruling of his objections to the affidavit of A. J. Keith, to the effect that Carl Foster told him, "He could not tell him anything about it [the killing]; that he was so badly scared that he did not know how it occurred." Defendant also complains that the court committed error in admitting, upon the hearing, the affidavits of R. M. Gudger and J. A. Hemphill, as to statements made by the defendant, tending to show that the killing did not occur as related in the Foster affidavit. The credibility of a witness by whom it is claimed the newly discovered evidence will be delivered on another trial, if one is granted, and whether or not the statements of such witness are true, and the question as to whether or not such evidence would likely produce a different verdict, are always questions material to be considered upon the hearing of a motion for a new trial, and the court committed no error in overruling the objections to the affidavits named. In this connection, see *Carroll* v. *State*, 108 *Ga.* 788 (33 S. E. 841); *O'Neil* v. *State*, 104 *Ga.* 538 (30 S. E. 843).

The defendant assigns error on the admission of evidence to show that the defendant subpœnaed the witness Foster. This evidence was admissible to show knowledge of the defendant of the fact that Carl Foster was a witness in the case, and that his testimony was at the command of the defendant upon the trial.

No errors were committed by the court, requiring a new trial.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*