52725, 52726. ORKIN et al. v. THE STATE;
and vice versa.

DEEN, Presiding Judge.

1. This appeal stems from the denial of an extraordinary motion for new trial in the case reported in *Orkin v. State,* 236 Ga. 176 (223 SE2d 61), wherein the conviction of William B. Orkin and Bobby Charles Bowen of conspiracy to murder Gerald Johnson was affirmed. The facts of the case as there set out will not be repeated. The second division of that opinion affirms the denial of motions to suppress evidence obtained by electronic surveillance based on evidence then available. The present appeal enumerates three additional pieces of evidence obtained after the conclusion of the trial, by means of a deposition given by Gerald Johnson in a pending related civil case. Appellants contend that had this testimony been available at the time of the hearing on the motion to suppress, a judgment excluding the tapes from evidence would have been demanded, and that without the evidence contained in the taped conversations a verdict against the defendants would not be legally sustainable. We have considered the additional evidence turned up by the deposition, and, assuming that the attorneys for the appellants showed due diligence and that all other criteria necessary to an extraordinary

motion for new trial were met, we find no reversible error.

(a) Briefly, in the original case, the warrant authorizing the wiretap of Bowen's telephone was attacked as failing to include the name of William Orkin as a known party to the conspiracy. The Supreme Court stated in Division 2 (d) of its opinion, supra, p. 186: "Where probable cause does exist to believe that a person is both involved in the illegal activity and likely to use the monitored facility, he must be named in the application and order [authorizing the wiretap] for the evidence obtained to be used against him." The district attorney and the judge were aware that Bowen had stated he was hiring a killer at the request of Orkin, and that he thought Orkin wanted Johnson killed because Johnson had discovered the personal interest which Orkin had in Johnson's wife. The Supreme Court held that knowledge of this fact did not void the warrant which named Bowen and "other persons unknown." The new evidence is that after knowledge of Bowen's statement and before the application for the warrant Johnson was himself interviewed and admitted knowledge that his wife had been having a relationship with Orkin. While this is a higher type of evidence, perhaps, as to Mrs. Johnson's or Orkin's behavior with each other, it gives no more probable cause for believing that Orkin was in fact a co-conspirator in the murder plans than does Bowen's own statement to that effect. Probable cause, in this context, is "the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of [the] crime." *Dixon v. S. S. Kresge, Inc.,* 119 Ga. App. 776, 779 (169 SE2d 189) and cit. This information is no more than cumulative as to the existence of a *motive,* not the fact. Johnson had no information at all that anyone was attempting his life. Accordingly, this cumulative evidence relating to motive does not change the original holding of the trial court, as affirmed.

(b) In the original motion to suppress it was contended that the tapes of telephone conversations between Orkin and Bowen (state's exhibit 13) should be suppressed because of a violation of Code § 26-3004 (k),

providing that any publication of material so obtained "other than that necessary and essential to the preparation of and actual prosecution for the crime" is such an unlawful invasion of privacy as to require its exclusion from evidence. The third division of *Orkin v. State,* supra, holds that evidence that these tapes were played to the Johnsons on September 18, for purposes of voice identification, did not taint the evidence. The question is what is reasonably necessary and essential to the preparation of the case for trial, and this is a fact question resting in the first instance in the controlled discretion of the district attorney, subject to review by the trial court. The "newly discovered evidence" which we deal with here is that the Johnsons also heard the tapes or possibly the conversations themselves on June 20, 1974. At that time, of course, the district attorney was in the very process of obtaining and attempting to verify the information on which the indictment would be drawn and the trial strategy formulated. The Supreme Court has already held that allowing the Johnsons to hear the tapes on September 20 did not nullify their evidentiary value, and we find no additional reason to believe that their hearing this evidence on June 20 had any different effect.

(c) Lastly, at the request of the Johnsons, their attorney was present with them during at least a part of the time the tapes were played in September, a fact not divulged until the taking of the deposition. We would be loath to hold that the intended victim and possible special prosecutor of a crime directed against himself is not, in giving aid to the law enforcement officers, himself entitled to have the benefit of counsel. One appearing as counsel for another appears as his special agent and alter ego, and except where otherwise excluded by statute his entitlement to be present is controlled only by the entitlement of his client. It follows that none of the three facts divulged by the depositions is sufficient, by itself or in conjunction with the others, to demand a ruling on the motion to suppress contrary to that made by the Supreme Court in this case.

2. In view of the above holding, it is not necessary to consider the state's cross appeal.

*Judgment affirmed in Case no. 52725. Case no.*

*52726 dismissed. Stolz, Webb, Marshall and McMurray, JJ., concur. Bell, C. J., Quillian, P. J., Clark and Smith, JJ., dissent.*

ARGUED SEPTEMBER 15, 1976 — DECIDED NOVEMBER 17, 1976 — CASE NO. 52725 REHEARING DENIED DECEMBER 3, 1976 —

*Charles L. Weltner, Wesley R. Asinof, Hansell, Post, Brandon & Dorsey, Allen Post, Hugh M. Dorsey, Jr.,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, William M. Weller, Carter Goode, Assistant District Attorneys,* for appellee.

QUILLIAN, Judge, dissenting.

I respectfully dissent from Division 1 (c) of the majority opinion.

1. In Division 1 (c), it was held that the presence of counsel with a state witness during the playing of an intercepted communication by the state was not "sufficient, by itself or in conjunction with the others [facts], to demand a ruling on the motion to suppress contrary to that made by the Supreme Court in this case."

To me the statute as to publication of any information obtained under the warrant is clear and unambiguous. Code Ann. § 26-3004 (k) (Ga. L. 1968, pp. 1249, 1328; 1972, p. 615; 1972, pp. 952, 953) states: *"Any publication* of the information or evidence obtained under a warrant issued hereunder *other than that necessary and essential to the preparation of and actual prosecution* for the crime specified in the warrant shall be an unlawful invasion of privacy under this Chapter, and *shall cause such evidence* and information *to be inadmissible* in any criminal prosecution." (Emphasis supplied.)

Prior to the trial the state called in Mr. and Mrs. Johnson to listen to the intercepted communication—as they stated, to attempt to identify the voice of Mr. Orkin. I see nothing wrong with this. It was for a purpose that was "necessary and essential to the preparation of" this case. However, they brought with them an attorney, Mr.

O'Brien. The majority finds no fault with their attorney being present as "[o]ne appearing as counsel for another appears as his special agent and alter ego." Mr. Johnson testified that Mr. O'Brien had "been more or less a lawyer for [him and his] wife over a number of years." He was asked whether or not it was his general practice "to consult with him when problems arise?" He said that it was, and testified as follows: Q."And did you do it with him in this particular situation? A. I sure did. He called me as a friend. Q. Now, on the occasion that you and your wife and Mr. O'Brien came down to our office the Wednesday before the trial, did he come down at you and your wife's personal request with you? A. Yes, he did ... Q. Mr. Johnson, did you say in response to Mr. Weller's question that you called in Mr. O'Brien as a friend? A. No Mr. O'Brien called me as a friend. Q. Oh, he called you as a friend? All right. A. Strictly as a friend, Mr. Weltner. Q. I see. Just as a friend. A. Yes, sir. He had been for a long time."

I dissent from the majority. Whether Mr. O'Brien was present as a friend or as an attorney representing either of the state's witnesses, there is no exception carved out of the statute for the presence of anyone other than those "necessary and essential to the preparation of and actual prosecution for the crime specified." See *Orkin v. State,* 236 Ga. 176, 188 (223 SE2d 61). Mr. O'Brien's presence was neither "necessary" nor "essential" to the preparation or prosecution of this case. Code Ann. § 26-3004 (k).

"Wiretap statute provides a right not only to have unlawful intercepts suppressed as far as use in court is concerned, but also creates [the] right not to be overheard except in conformity with the statutory provisions." United States v. Bernstein, 509 F2d 996 (8) (4th Cir. 1975). This publication of an intercepted communication to an individual not connected with "the preparation of or prosecution of this case" renders it inadmissible. Code Ann. § 26-3004 (k).

The state contends there was no publication. This question has already been settled by the Supreme Court. They held: "This publication took place in a locked office and was a very limited publication for voice identification

purposes." *Orkin v. State,* 236 Ga. 176, 190, supra. The facts in the record clearly show that the Supreme Court's statement of what transpired was in error. The actual testimony is that Mr. O'Brien was "in and out" during the playing of the tape to Mr. and Mrs. Johnson and was not hindered by the locked doors.

For the reasons stated above the publication of the tape in Mr. O'Brien's presence was in violation of Code Ann. § 26-3004 and thereby rendered inadmissible.

2. The state attacks defendant's extraordinary motion for new trial as lacking in "diligence," citing *Emmett v. State,* 232 Ga. 110 (7) (205 SE2d 231). *Emmett* holds that it is incumbent on a party seeking a new trial on the ground of newly discovered evidence to satisfy the court, inter alia: "(2) that it was not owing to the want of due diligence." The state argues that the defendant could have called Johnson as a witness (citing *Harper v. State,* 131 Ga. 771, 774 (63 SE 339)) or cross examined "[t]he district attorney's representatives . . . about what Johnson told them . . ." The record reflects defendant's counsel's letter to the Johnsons before trial to attempt to talk to them was refused. An affidavit of defendant's counsel reveals that a motion to the trial court to require Johnson to submit to examination under oath was denied.

Johnson was never called as a state witness, thus the opportunity for examination by defendant's counsel was completely frustrated. Without examining Johnson it was never revealed that he had played a part in the determination of probable cause for issuance of the investigative warrant or the publication of the intercepted communications. Since these facts were never revealed I cannot fault defendant's counsel for not cross examining members of the district attorney's office as to something he never knew existed. As our Supreme Court stated in *Matthews v. Grace,* 199 Ga. 400, 406 (34 SE2d 454), such evidence "shows an endeavor to discover evidence of the very fact which the new evidence here established. It would be unreasonable to require more. . . It was an abuse of discretion to overrule" the motion for a new trial.

I am authorized to state that Chief Judge Bell and

Judges Clark and Smith concur in this dissent.